David MILLER, a minor, and Ben F. Miller III and Alice Miller, individually and as parents and next friend, Plaintiffs,

v.

J. Walter GILLIS, Elizabeth M. Rueck, Robert A. Madding, Robert M. Baker, John Fencik, George B. Foy, Edwin A. Troutt, Thomas E. English, Sears L. Hallett, Mitchell P. Kartalia, Raymond J. Van Royden, and Paul L. Williams, each individually and as members or agents of the Board of Education, School District #224, County of Lake, State of Illinois, a body politic and corporate, and the Board of Education School District #224, County of Lake, State of Illinois, a body politic and corporate, Defendants.

No. 69 C 1841.

United States District Court, N. D. Illinois, E. D.

Sept. 25, 1969.

Allyn J. Franke and Ralph Miller, Norman, Engelhardt, Billick, Franke & Lauritzen, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

The question presented by this case is whether a publically supported school district operating under state law that gives it authority to discipline pupils who attend its schools can refuse re-admission to or expel from its high school a male pupil who wears his hair shoulder length without violating some right guaranteed to him by the Constitution of the United States.

It must be made clear from the outset that this is not a case involving a revolutionary type young man, who by bizarré attire, filth of body and clothes, obscene language and subversive-like organizational activity, seeks to wage war against the established institutions of the community or nation. It is not a case involving youth commonly referred to as "beatniks" or "hippies" or "yippies". It is simply a case of a seventeen year old boy wearing hair substantially longer than that permitted by the school's regulations.

Under Illinois law, there is compulsory school attendance until the child reaches sixteen years of age, and, if he is above sixteen years of age and is enrolled in any grade through the fourth year of high school, he is compelled to attend school during the regular school term. Ill.Rev.Stat., Chap. 122, Sections 26–1 and 26–2. School Boards have the duty "to adopt and enforce all necessary rules for the management and government of public schools of their district", and the maintenance of discipline among the pupils in them, and in doing so are empowered to expel or suspend students guilty of gross disobedience; and teachers and other certificated educational employees are directed to maintain discipline in the schools. Ill.Rev.Stat. Chap. 122, Sections 10–20.5, 10–22.6(a) and 24–24.

Burton Joseph, Chicago, Ill., for plaintiffs; David Goldberger, American Civil Liberties Union, Chicago, Ill., of counsel.

A careful examination of the Chapter on Schools of the Illinois Revised Statutes (Chap. 122), and particularly of those sections relating to the powers and duties of school boards, reveals no express or implied authority in the exercise of which a school board may deny admission to a child who otherwise is authorized by Illinois law to attend school.

In this case, the plaintiffs, David Miller, a minor, and his parents and next friends, Ben F. Miller III and Alice Miller, brought action against the Board of Education of School District #224 in Lake County, Illinois, defendants, asking for an injunctive order compelling the school board and its members to admit David Miller to the Barrington Consolidated High School, and preventing them from suspending or expelling him from that school subsequent to his admission.

Jurisdiction is asserted under 28 U.S. C. Sections 1343, 2201, 2202 and 42 U.S. C. Section 1983. The Court has jurisdiction over the parties and the subject matter of this suit. My findings of fact and conclusions of law appear in this opinion.

For the past six years, Barrington Consolidated High School, located in Barrington, Illinois, a suburban community located northwest of Chicago, has had a dress code regulating the type and manner of students' clothing and appearance. In the school year of 1968–1969, the enforcement of this code was relaxed, and, along with other disciplinary matters, was turned over to the students. During that period, there was an increase of complaints by teachers and parents to the School Board concerning an apparent lack of discipline among students. In addition, the Board noticed a higher rate of truancy during the period of relaxation.

During 1968–1969, David Miller allowed his hair to grow until at the end of the school year it was one-inch or less shorter than the shoulder length it was at the time of the hearing in this case. Although the length of the plaintiff's hair during the last school term exceeded the standards set out in the dress code, David was allowed to remain in school until the end of the term at his mother's request, because it was thought by her that dismissal or suspension would have an adverse psychological effect on the boy.

Two weeks before the day set for this year's enrollment, the School Board circulated to every prospective student a document entitled, "1969–70 Student Handbook, Barrington Consolidated High School", which sets out information, maps, school songs and organizations, a list of faculty members, and a number of regulations to be in effect this school year. Among the regulations, there is a section concerning dress of students, which reads as follows:

DRESS

The appropriateness of dress is a subject on which opinions can and do vary. We wish there were no need for a dress code but it is believed a minority of students would take advantage of this privilege. For this reason, it is asked that *students assume responsibility* for the way they dress and do not wear extreme style or fit. Dressing the way we please is a privilege. Please do not take advantage of these few requirements.

*Boys*

I. Pants

A. Dress pants, slacks, pressed khakis, or levis shall be worn.

1. Pants shall be worn at the waist, not low on the hips.

2. Belts should be worn at all times except in the case of pants without belt loops. Built-in belts are acceptable (such as continental style).

II. Shirts

A. Shirt tails must be tucked in and shirts properly buttoned. Sport shirts, if square cut, may be worn in or out.

1. White T-shirts are considered underwear and therefore are not acceptable unless covered by a shirt.

2. Sweatshirts or other shirts displaying the name or emblem of a non-campus club, group, or business, are not acceptable.

III. Shoes

A. Feet should be properly covered. Boots are not to be worn during the school day because of health reasons and floor damage.

1. Socks are to be worn at all times for health reasons.

2. Taps that create a noise or property damage are not to be worn (unless required by a physician for corrective purposes).

IV. Hair

A. Hair should always appear clean and neat, tapered up the back of the neck, and not protruding over the ears or the eyebrows.

1. Students must be clean-shaven and sideburns should not extend lower than the earlobes.

V. Jewelry

A. Beads, medallions, Maltese crosses, etc., will not be worn during school hours.

*Girls*

I. Clothing

A. Blouses/skirts, sweaters/skirts, or sport type dresses shall be worn.

1. Blouses, dresses, and sweaters must have armholes high enough to cover undergarments.

2. Extremely tight fitting clothing shall not be worn.

3. Skirts shall not be more than four inches (4″) above the knee.

4. Midriffs, backless, shoulderless dresses are not acceptable. Spaghetti straps or tie straps are not to be worn. Blouses should be worn under low necked sweaters.

5. Blouses must be worn tucked in unless the blouse is designed to be worn outside the skirt as an overblouse.

6. Play clothes, such as slacks, pedal pushers, shorts, Bermudas, leotards without a skirt, etc., are not acceptable wear unless specifically designated for special occasions.

II. Hair

A. Hair styles shall be neat, properly combed, appropriately arranged, and extreme styles avoided. Bangs are to be neat and short enough to show the eyebrows.

1. Pincurls, clippies, rollers, or glitter may not be worn during school hours. Head scarves are not to be worn in classrooms.

III. Make-up

A. Make-up shall be applied sparingly and not to the point of attracting undue attention.

1. Excessive jewelry is not appropriate for school wear.

IV. Shoes

A. Shoes should be appropriate for school wear. Roman type sandals or boots are not acceptable. Hosiery, anklets, or peds are to be worn for good health practices.

Public display of affection, in school, is considered to be in very bad taste and is strongly discouraged.

Students, as well as their parents, should assume the responsibility of following the established dress code.

On August 26, 1969, when David Miller presented himself for enrollment, he was told that he would not be allowed to enroll until he cut his hair in compliance with the dress code.

Subsequently, on September 8, 1969, David, by his parents and next friend, filed this suit alleging that the dress code was a violation of his rights under the First, Fourth, Ninth and Fourteenth Amendments to the Constitution of the United States. They alleged that the School Board, under the authority granted to it by Illinois law, has the power only to suspend or expel and could not deny admission to any qualified student. They asked this Court to hold the "dress code" unconstitutional, and thereby the

action of the Board barring David's enrollment unconstitutional. They further asked this Court to enjoin the defendants from enforcing the dress code and from barring David Miller's attendance, and for a judgment in the sum of $300.00 actual damages and $1,000.00 punitive.

On September 11, 1969, the plaintiffs moved this Court for temporary injunctive relief to enjoin the defendants from barring David Miller's enrollment, and once he was enrolled from suspending or expelling or otherwise punishing him because of his violation of the dress code.

I set a hearing on this matter for September 17, 1969, and I stated that in my opinion the Board was without statutory authority to prevent David's enrollment. Between the time the motion was made and the hearing, the school acquiesced in my opinion and readmitted David and allowed him to enroll. Immediately thereafter, he would not be permitted to attend classes until such time as he trimmed his hair to a length suitable to the Superintendent within the meaning of the dress code. The school's action rendered moot the first part of plaintiffs' request for injunctive relief.

At the hearing on the 17th, the Court, having received the testimony of witnesses and arguments of counsel for both sides, took the matter under advisement, but entered, upon its own motion, a temporary restraining order allowing David Miller to attend classes while the matter was pending the Court's determination. My theory was that it would be best that I see to it that the child could continue his education while I deliberated than to leave him out of school for a period of time made necessary only by the Court's schedule.

The Court notes that the plaintiff's appearance in court was orderly. He was respectful both to the lawyers and to the Court. His dress was comparatively conservative and not improper for the occasion. His hair, which still was of shoulder length, was clean and groomed. David testified that he has two older brothers, both of whom have long hair, and that his family, apparently substantial and educated people, support his right of choice with relation to the length of his hair.

The Superintendent of the school testified that the dress code had been amended as to the length of the girls' dresses because many mothers complained that they were unable to purchase dresses long enough to satisfy the code's requirements. He also testified that "extreme styles" in clothing and personal appearance would be disruptive of classes by causing students to ridicule persons having such extreme styles or appearance. But he admitted that it was the students who did the ridiculing who should be disciplined, whereas the student ridiculed should be counselled. When asked for examples of disturbances attributable to extreme dress, he could mention only one. It was related to an argument in the school cafeteria over the possible outcome of this case.

The Administrative Assistant to the Superintendent could remember no disruptive incidents over clothing other than the one in the cafeteria. He admitted that several of the larger neighboring schools operated without dress codes. He was unaware of any incidences of disturbance. He did state that one such neighboring high school had had some trouble with smoking. Then he testified that there were a number of teachers presently on the Barrington High School Faculty who have either long hair or beards, which, were they students, would cause them to be in violation of the dress code. They, however, he explained, are not subject to disciplinary action.

A Member of the School Board testified that the dress code was part of the general discipline of the students, that violations of the code would be disruptive of the educational process, and that he had heard of an alleged incident wherein a student created a disturbance by wearing a string of beads into a room where a test was about to be conducted. He admitted that he was unaware of any

disruptive incidents attributable to David's long hair.

I find that the dress and personal styles of the students at Barrington Consolidated High School are conservative compared to those allowed students of schools both in the City of Chicago and in a number of suburbs close to Chicago and to Barrington. I could adduce no opinion evidence as to whether other Barrington students, if allowed, would adopt a hair style similar to that of David Miller.

This issue has now been presented to a District Court in each of the three states of this Circuit, the Seventh Judicial Circuit of the United States. Judge James E. Doyle in Madison, Wisconsin, found on February 20, 1969, that provisions of a similar code were violative of the student's rights under the Constitution. Judge James E. Noland in Indianapolis, Indiana, found on September 17, 1969, that the wearing of long hair did not constitute a right protected by the Constitution. I am at this time unaware of whether Judge Noland's case involved a dress code, or if it did what that code contained.

I agree wholeheartedly with Judge Doyle of Wisconsin. I am impelled by the language in his ruling in the case of Breen v. Kahl, 296 F.Supp. 702 (W.D. Wis.1969), wherein the facts are substantially akin to those here, when he stated:

> "I find that to deny a * * * 17 year old twelfth-grade male access to a public high school * * * is to inflict * * * irreparable injury for which no remedy at law is adequate."

If a constitutional provision is violated by the Barrington code or its enforcement, equitable relief should be made available to David Miller. The freedoms guaranteed under the Constitution and its Amendments are so basic and so essential to our lives under our Government and to the protection of the society, as we know it now and as it will eventually become, that the charge of violation of a person's rights under the Constitution always must be seriously considered.

■ Students are persons under the Constitution; they have the same rights and enjoy the same privileges as adults. Children are not second class citizens. The protections of the Constitution are as available to the new born infant as to the most responsible and venerable adult in the nation.

The plaintiffs would have the Court consider whether the Board has the power under the Illinois statutes to deny the admission of David Miller. However, as stated above, that power is not made available to the Board. The statutory power of the Board to suspend is clear, provided the exercise of such power is not in conflict with the Constitution of the United States.

Let us consider the question of the constitutionality of the Barrington High School dress code. The plaintiffs contend that the dress code as written violates the plaintiffs' rights under the First, Fourth, Ninth and Fourteenth Amendments. I shall take these contentions in order.

■ I cannot agree with the contention that the plaintiffs' rights under the First Amendment have been violated. The plaintiffs have cited numerous cases which show that the freedom of speech has been extended far beyond the use of actual words and that acts themselves can, under certain situations, constitute speech protected by this Amendment. Thus, in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1968), the Supreme Court held that a school board did not have the right to proscribe the wearing of armbands worn as a symbol of students' dislike for the war in Vietnam. Likewise, the wearing of freedom buttons was held to be an act of free speech and therefore protected by the Constitution. Burnside v. Byars, 363 F.2d 744 (5 Cir. 1966).

These are the only two cases cited by the plaintiffs which pertain directly to the appearance of the student or to

something worn by such students and which involved a violation of the First Amendment. It is clear that these cases may be distinguished on the grounds that they pertain to objects which are symbols of movements or ideas easily expressed and readily identifiable. David's wearing of his hair at shoulder length has never been contended by him to be part of a movement of hair growers, nor is it a symbol of some easily identifiable idea.. It is a mere exercise of the wearer's choice of hair style.

Plaintiffs also have contended that David's rights under the Fourth Amendment have been violated. I cannot agree with this either. Plaintiffs have cited the case of Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) as a source for the doctrine of expansion of the protection of the First and Fourth Amendments of the Constitution on the grounds that there is a vast "penumbra" of constitutional protection. While it is argued that a person in order to be guaranteed personal security against unreasonable seizure must be protected against unreasonable seizures of zones of conduct by the state, I find that the law does not go that far. Besides, it is unnecessary to speculate on such protection in this case. There is no logical relationship between the Fourth Amendment protection and the facts of this case.

I do not agree with plaintiffs' contention that the dress code violates rights under the Ninth Amendment. Justice Goldberg's remarks as to this Amendment in the *Griswold* case were addressed to a factual situation concerning the delicate relationship between doctors and their patients in the matter of certain birth control devices. The facts in that case bear no comparison to the one at bar. A similar argument was rejected in the case of Davis v. Firment, 269 F.Supp. 524 (E.D.La.1967) in a fact situation very similar to the one here.

■ However, I fully agree with plaintiffs contention as to the Fourteenth Amendment.

■ While agreeing with the opinion of Judge Doyle in the *Breen case, supra,* I do not consider this issue to be one of denial of due process. Rather, it involves a denial of equal protection of the laws under the Fourteenth Amendment. A regulation promulgated under the authority of a state violates the equal protection clause of the Fourteenth Amendment if it falls within one of more of the following four categories:

(1) The regulation is not necessary to the exercise of the inherent police powers of the state to provide for the health, education and general welfare of the people of that state;

(2) The regulation once promulgated is incapable of meeting the need to which the regulation is directed;

(3) The regulation creates, by its enforcement, an evil greater than that evil sought to be corrected; and

(4) The regulation is arbitrary in defining a class of people to which it applies.

There is no question about the fact that the Board has the power to promulgate regulations which prevent lewd or obscene behavior and which promote the orderly conduct of the educative process. However, I cannot believe that regulations which strictly, and admittedly conservatively, lay out severe and unduly restrictive limits of dress and personal appearance bear any rational relationship to the orderly conduct of the educative process.

It must be shown, and clearly so, that the particular style of dress and appearance complained of would in fact be actually disruptive. The evidence in this case clearly is to the contrary. The only examples of student misbehavior over dress seems to be a single incident in the cafeteria this year not personally involving David Miller and one last year when one individual wore beads to a classroom. If these are the only incidences of alleged disturbance because of

violations of the dress code over the past two years in a school of 2,500 students, the point sought to be made is absurd.

The School Board and its lawyers, having exhaustively argued and extensively briefed this point, have failed to show that the dress code, in its present form, is necessary to prevent disruptive incidents in the school. Apparently, the purpose of its promulgation and enforcement was to thwart ahead of time what the Board feared might eventually become a problem of student restlessness in Barrington. There is no evidence that the "dress code" would bring about this goal, or that restlessness in Barrington High School is an eventuality to be anticipated or precluded. It is a well-known principle of educational administration that schools do not automatically obtain good student behavior by inaugurating uniformity of dress. Conformity of this type is antithetical to education's wide aims. And it may well be that uniformity of dress is likely to create a greater evil than would a broad spectrum of appearance.

There is no question about the fact that the regulation of dress and appearance creates an arbitrary class of those few people who wish to wear their hair in a manner differing from the masses —arbitrary in that the regulation makes the acquisition of all education depend upon the length of one's hair.

Finally, it is a clear stroke of arbitrariness to operate on the basis that the appearance of a student with long hair would be substantially disruptive, when in the same school teachers who stand before these 2,500 students wearing hair equally long or longer are not disciplined or suspended or made to conform to the school code. How is it possible to hold that the student's presence is disruptive and therefore within the purview of the Board's power to discipline when the same Board allows its teachers to breach the same standards? When the dress code applies a standard to students which cannot be applied to teachers, students arbitrarily are discriminated against in violation of the Equal Protection Clause of the Constitution.

In final analysis, I find that the code of dress of Barrington High School, as applied to both boys and girls, in regard to both hair and attire, is so minutely detailed and restrictive that its compliance would violate that highly protected freedom of people to present themselves physically to the world in the manner of their own individual choice and is therefore in violation of a basic value "implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937).

Upon the facts as presented to me, and after long and careful consideration of the arguments presented by counsel and the cases cited in their briefs, for the reasons stated above,

It is ordered, adjudged, and decreed:

(1) That the regulation of the Barrington Consolidated High School, commonly known as the dress code, pertaining to the length and style of hair to be worn by male students attending that school, violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, and is null and void;

(2) That the Board of Education of School District #224 of Lake County, Illinois, is enjoined from continuing to enforce said section of the dress code, and from initiating the expulsion or suspension or other disciplining of the plaintiff David Miller, solely by reason of a violation of that section of that dress code;

(3) That there shall be expunged from the records of the Barrington Consolidated High School any records or mention revealing any disciplinary action taken this school year against the plaintiff by reason of the violation of the dress code; and

(4) That plaintiffs' prayer for $300.00 actual damages and $1000.00 punitive damages be and the same hereby is denied.