Chesley KARR, a minor, Individually, and John R. Karr, Individually and as next friend and Guardian ad Litem, on behalf of themselves and all others similarly situated,

v.

Clifford SCHMIDT, Principal of Coronado High School; H. E. Charles, Superintendent; Harold Wiggs, Mrs. William C. Collins, Elman A. Chapa, Javier Montez, and Dr. R. A. D. Morton, Jr., the Board of Trustees for the El Paso Independent School District, Individually and in their respective official capacities.

No. EP–70–CA–229.

United States District Court,
W. D. Texas,
El Paso Division.
Nov. 19, 1970.

Ruth Kern and Clarence Moyers, El Paso, Tex., for plaintiffs.

Allen R. Grambling, Morris A. Galatzan, Harold Sims, El Paso, Tex., for defendants.

## MEMORANDUM OF DECISION

SUTTLE, District Judge.

On August 12, 1970, plaintiff Chesley Karr, aged 16, was told he could not register as a Junior Student in Coronado High School until he conformed to that portion of the student "dress code" governing length of hair for boys. Principal Clifford Schmidt's action was approved by the Board of Trustees for the El Paso Independent School District after full hearing. Chesley Karr and his father John Karr, individually and as next friend and guardian ad litem, then brought this action on behalf of themselves and others similarly situated against the Superintendent, Board of Trustees, and Principal Schmidt alleging that the regulation and its enforcement violates the plaintiffs' rights under the First, Ninth and Fourteenth Amendments to the United States Constitution. Plaintiffs seek an injunction and damages under 42 U.S.C. § 1983 and declaratory relief pursuant to 28 U.S.C. §§ 2201 et seq., alleging jurisdiction based upon 28 U.S.C. § 1343.

▮▮ Defendants preliminarily contend that (1) the complaint fails to allege a cause of action over which this Court has jurisdiction, (2) this Court lacks jurisdiction of the alleged cause of action because of plaintiffs' failure to exhaust their State administrative and judicial remedies, (3) this single-judge court lacks jurisdiction over the constitutional claims, since 28 U.S.C. §§ 2281 et seq. requires the convening of a three-judge federal district court, and (4) the case is not a proper class action. The Court finds that the Complaint alleges a non-frivolous cause of action raising substantial federal questions under 42 U.S.C. § 1983 over which this Court has jurisdiction under 28 U.S.C. § 1343. Defendants are proper parties, both in their official and individual capacities.[1]

▮▮ The Court further holds that failure to exhaust available state judicial remedies is no jurisdictional bar to the instant action.[2] Nor is failure to exhaust available state administrative remedies. Federal courts require only "such prior reference to local institutional authority as may be necessary to assure that the action complained of is final within the institution in the sense that it is ripe for adjudication."[3] This has clearly been fulfilled in this case.

▮ While the Complaint sought a declaration that §§ 21.301 and 23.26, Texas Education Code, V.T.C.A., are unconstitutional, it nowhere sought an injunction "restraining the action of any officer of [the] State in the enforcement or execution of such statutes."[4] Even this claim was abandoned on oral argument, leaving only the attack on a portion of a school board policy which, having only local effect, may be determined by a single district judge rather than a three-judge federal court.[5]

▮▮ Since no specific evidence was offered as to the amount of money damages plaintiffs have suffered, that portion of the Complaint and its prayer must be dismissed. This being the case, the Court questions whether a formal ruling on the propriety of entertaining this suit as a class action is necessary, since any grant or denial of the declaratory and injunctive relief sought by the named plaintiffs would necessarily satisfy the alleged class. Since the point has

1. See Harkless v. Sweeny Ind. School Dist., 427 F.2d 319 (5th Cir. 1970).

2. Moreno v. Henckel, 431 F.2d 1299, 5th Cir. 1970, specifically disapproving the holding in Schwartz v. Galveston Ind. School District, 309 F.Supp. 1034 (S.D. Tex.1970).

3. Stevenson v. Bd. of Educ. of Wheeler County, 426 F.2d 1154, 1157 (5th Cir. 1970); see Moreno v. Henckel, *supra.*

4. 28 U.S.C. § 2281; *cf.,* Gunn v. University Committee, etc., 399 U.S. 383, 90 S.Ct. 2013, 26 L.Ed.2d 684 (1970).

5. Vandygrift v. Home Rule Charter Comm., 425 F.2d 255 (5th Cir. 1970); Davis v. Francois, 395 F.2d 730 (5th Cir. 1968); cases cited in Plaintiff's Brief on Three-Judge Court Requirements.

been raised, briefed and argued, however, the Court holds that, in light of evidence as to how many students the "hair-cut" provision of the dress code has and potentially may affect, the requirements of Rule 23(a) and (b) (2), F.R.Civ.P., have been met, and that the named plaintiffs are entitled to bring this suit as a class action.[6]

Defendants' Motion to Dismiss is therefore denied, and it is so ordered. To the extent that the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Defenses are directed to the same issues, they are without merit.

■ Before examining the circumstances of this particular case, a brief, if perhaps over-simplified summary of "hair law" might be helpful. Following a course first charted in this circuit, most courts have either held or assumed that one's choice of hair style is constitutionally protected and that the State may invade this interest only upon a showing of compelling reason, *i. e.*, that the forbid-

den style, if allowed, would be a material and substantial interference to the educational system.[7] Consequently, hair-cut codes have been upheld where the school has objectively demonstrated that long hair resulted in disruptions of the educational process such as harassment, use of obscene or derogatory language, fights, health or safety hazards, obscene appearance or distraction of other students.[8] Conversely, if the school authorities were unable to support factually their rule, offering speculation only, the rule is held unreasonable and hence in violation of the equal protection and/or due process clauses of the Fourteenth Amendment.[9] In short, "The touchstone for sustaining such regulations is the demonstration that they are necessary to alleviate interference with the educational process."[10]

The policy of the Board of Trustees of the El Paso Independent School District regarding student dress was first codified in March, 1969.[11] The first specific reference to hair was added in Sep-

---

6. Lansdale v. Tyler Jr. College, 318 F. Supp. 529, E.D.Tex., October 9, 1970; and cases cited therein.

7. See Ferrell v. Dallas Ind. School Dist., 261 F.Supp. 545 (N.D.Tex.1966), aff'd, 392 F.2d 697 (5th Cir. 1968), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968).

8. Southern v. Bd. of Trustees, Dallas Ind. School Dist., 318 F.Supp. 355, N.D. Tex., October 5, 1970; Whitsell v. Pampa Ind. School Dist., 316 F.Supp. 852, N.D.Tex.1970; Pritchard v. Spring Branch Ind. School Dist., 308 F.Supp. 570 (S.D.Tex.1970); Wood v. Alamo Hts. Ind. School Dist., 308 F.Supp. 551 (W.D.Tex.), aff'd, 433 F.2d 355, 5th Cir., November 6, 1970; Stevenson v. Wheeler Co. Bd. of Educ., 306 F.Supp. 97 (S.D.Ga.1969), aff'd, 426 F.2d 1154 (5th Cir. 1970); Crews v. Cloncs, 303 F.Supp. 1370 (S.D.Ind.1969); Davis v. Firment, 269 F.Supp. 524 (E.D.La. 1967), aff'd, 408 F.2d 1085 (5th Cir. 1968); see Jackson v. Dorrier, 424 F. 2d 213 (6th Cir.), cert. den., 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed.2d 88, (1970).

9. Lansdale v. Tyler Jr. College, *supra*; Sims v. Colfax Community School Dist.,

307 F.Supp. 485 (S.D.Iowa 1970); Miller v. Gillis, 315 F.Supp. 94 (N.D.Ill. 1969); Calbillo v. San Jacinto Jr. College, 305 F.Supp. 857 (S.D.Tex. 1969); Westley v. Rossi, 305 F.Supp. 706 (D.Minn.1969); Richards v. Thurston, 304 F.Supp. 449 (D.Mass.1969); Griffin v. Tatum, 300 F.Supp. 60 (M.D. Ala.1969), aff'd in part, rev'd in part, 425 F.2d 201 (5th Cir. 1970); Zachry v. Brown, 299 F.Supp. 1360 (N.D.Ala.1967); Breen v. Kahl, 296 F.Supp. 702 (W.D.Wis.), aff'd, 419 F.2d 1034 (7th Cir. 1969), cert. den., 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970).

10. Griffin v. Tatum, *supra*, 425 F.2d at 203.

11. "Pupils shall be properly dressed and groomed at all times. * * *

"No child shall be admitted to school or shall be allowed to continue in school who fails to conform to the proper standards of dress. (Articles 2780 and 2904 of Civil Statutes of the State of Texas, Vernon's Ann.Civ.St.)

"Failure to comply with the rules of dress shall be grounds for suspension."

tember, 1967,[12] and remained substantially unchanged through amendments of the Board's policy 5370 in September, 1968,[13] and May, 1969.[14] Prompted by a request of the Superintendent's Student Advisory Committee in May, 1970, that the dress code be suspended for the remainder of the school year in order to gain empirical evidence of the necessity therefor, the Board of Trustees set up an Ad Hoc Committee on Student Grooming and Dress, composed of a student, parent, and administrator from each senior high school, to study the matter and recommend to the Board (1) whether a dress code is needed, and if so, (2) what the dress code should be for El Paso public schools.[15] After full discussion, the Board adopted the recommendation of the Ad Hoc Committee, with minor changes, July 24, 1970. As finally applied to students, the code reads, in its relevant parts, as follows:

"The matter of student grooming is of utmost concern to parents who realize the importance of seeing that children are properly attired when they leave for school each day. Also, student behavior is influenced by proper dress and grooming. Consequently, student grooming is the proper concern of school administrators and teachers.

"In order to help ensure proper acceptable behavior on the part of the students, it becomes necessary to establish certain guidelines to aid parents and students in selecting the proper attire for the school year. Schools also recognize that parents are basically responsible for their children's dress and general appearance. The role of the school is one of guidance for pupils in an effort for total education and the development of proper attitudes.

"Student dress will be considered acceptable if it does not violate any of the three following principles:

1. Clothing worn is not to be suggestive or indecent.

2. Clothing and general appearance is not to be of the type that would cause a disturbance or interfere with the instructional program.

3. Clothing and general appearance is to be such as not to constitute a health or safety hazard.

Guidelines for dress and grooming are:

\* \* \* \* \* \*

FOR BOYS

1. Hair may be blocked, but is not to hang over the ears or the top of the collar of a standard dress shirt and must not obstruct vision. *No artificial means to conceal the length of the hair is to be permitted; i. e., ponytails, buns, wigs, combs, or straps.*

\* \* \* \* \* \*

"Cleanliness of body and clothing is expected of all students at all times.

"No child shall be admitted to school or shall be allowed to continue in school who fails to conform to the proper standards of dress.

"Failure to comply with the rules of dress shall be grounds for suspension." [16]

---

12. To the above was added, in relevant part, the following:
"*High School Dress*
   "*Acceptable for Boys*
      \* \* \* \*
      "4. Hair well-groomed."
   "*Not Acceptable for Boys*
      \* \* \* \* \*
      "3. Extreme hair styles which are too long or tend to be untidy."

13. "Only relevant amendment reads:
"*Acceptable for Boys*
      \* \* \* \* \*
      "4. Hair well-groomed and trimmed, clean shaven, and no sideburns below the middle of the ear."

14. Allowed sideburns to extend to bottom of earlobe.

15. Each committee member was given a packet of materials including the Sixth Circuit's opinion in Breen v. Kahl, *supra*; newspaper article reflecting denial of certiorari; editorial reflecting difficulty in getting job with long hair; and dress codes from school districts around the State of Texas.

16. Arts. 2780 and 2904, Civil Statutes of the State of Texas. cited as authority, are now §§ 23.26 and 21.301, Texas Education Code (1969), respectively. The

At the trial, plaintiff Chesley Karr's hair, while clean, neat, and well-groomed, was over the collar of his dress shirt in back and covered most of his ears. This is the only reason he was and is not permitted to enroll in Coronado High School [17] and delimits the only issue in the case.

Defendants' witnesses, including three students who served on the Ad Hoc Committee, a football coach, a science teacher, two typing teachers, two Student Activities Directors, three Assistant Principals, four Principals, and the Superintendent, offered their opinions that the regulation limiting the length of male students' hair is necessary to prevent interference with the educational process. Hair longer than the code permits is said to bear a reasonable relationship to distractions in and disruptions of classes, health and safety of students, and discipline.

The overwhelming preponderance of the relevant, credible evidence in the case indicates, however, that the presence and enforcement of the hair-cut rule causes far more disruption of the classroom instructional process than the hair it seeks to prohibit. To the extent that the alleged disruptions and distraction of others were not caused by the rule itself, long hair creates no more interference with the educational process than any of the myriad of personal idiosyncracies of both male and female students which must be dealt with when young people are gathered together for a common purpose. Similarly, the theory that deviation from the norm of hair styles for male high school students *per se* creates distraction is bootstrapped by the rule itself which creates the norm, deviation from which supposedly causes distraction. To the extent the rule does not establish the norm, this Court, from the evidence in the case and current periodicals, cannot find that hair on young people in excess of that allowed by the rule so deviates from the societal norm in male hair styles, if in fact there is one any more, as to be distractive.[18] The Court finds that the style in which a male high school student wears his hair has such a tenuous and speculative relationship to any material or substantial distraction or disruption of the educational or instructional process as to render any rule regarding length of hair based upon such a relationship, if any, unreasonable.

Health considerations include the possibility of a longer-haired male student being a health hazard to others because long hair is harder to keep clean than short hair and the possibility of his being a health hazard to himself because longer hair is harder to get dry after washing it than short hair. There was also testimony that longer-haired male students naturally smell worse than their shorter-haired counterparts. As to cleanliness and odor, the dress code specifically provides that "Cleanliness of body * * * is expected of all students at all times." Enforcement of this requirement would make the length of hair irrelevant to general cleanliness. The Court further finds that the style in which one chooses to wear his hair has no relationship to habits of personal hygiene one develops through parental training and peer-group influence. Female students have traditionally kept long hair clean. Male students desiring long hair can and should learn to do the

---

italicized portions of the above were added to the Board's Policy 5370 as Administrative Regulations.

17. Indeed, the evidence shows that plaintiff Chesley Karr was a good student, participated and represented his school in extracurricular activities, and had no discipline problems except one prior occasion when he was told to cut his hair. His physical appearance and demeanor in court were exemplary.

18. While the contrary may have been true in Dallas in 1966, see Ferrell v. Dallas Ind. School Dist., *supra*, and today in Pampa, see Whitsell v. Pampa Ind. School Dist., *supra*, all courts have emphasized the necessity for a case-by-case approach, viewing the issue on the particular facts, circumstances and evidence of each case, and this opinion is so limited.

same. Requiring them to cut their hair neither teaches this lesson nor eliminates its need. The same is true regarding the speculation that longer-haired male students, in learning the lessons of cleanliness, expose themselves to illness. Length of hair is simply irrelevant to the goal sought or the teaching of the means of obtaining it.

Safety in science laboratories presents a similar situation. The goal is laudable, but requiring short hair is simply not reasonably related enough to the problem to be a sustainable solution. The preponderance of the credible evidence indicates, and this Court finds that male students, like females, can and do develop means by which their long hair may be controlled so as not to create a safety hazard in science laboratories. There was no evidence of long hair actually causing injury in any science class, except for one student who purposefully ignited his own coiffure. The speculation offered simply does not comport with reason.

A tangent of the safety argument, originating with the Ad Hoc Committee, is that conforming hair styles for male high school students is necessary to protect them from non-students, since it enables school administrators to readily distinguish the shorter-haired students from the "long-haired, outside influences" which might do them harm. The Court finds that even if there were a real need for such swift identification, which there is not, requiring the "threatened" group to conform to a rule in violation of their own taste and wishes and right to choose their own style of hair is no more a valid solution to such problem than the State requiring all non-students to wear long hair so as to be readily identifiable. Assuming that "outside influences" need be kept off school campuses and away from students, the Court finds that the style in which male high school students wear their hair has no reasonable relationship to the goal sought.

The justification of "discipline" has many facets. First, there is evidence in the case that a greater percentage of students referred to the school administration for discipline have hair bordering on or in violation of the code than does the student population as a whole. Yet there is no credible evidence that the longer hair caused the discipline problems or that specific discipline problems of a student would have been avoided had his hair been shorter. The Court finds, from a preponderance of the credible evidence, to the contrary. To the extent short-haired boys have had to be disciplined for harassing and/or assaulting those with longer hair, we again see the need for specific solutions to specific problems, as with health and safety above. The teaching of tolerance is reasonably related to the disturbance; the length of hair is not.

From specific discipline problems, we proceed to the general proposition advanced by virtually all of defendants' witnesses that a rule such as the one here attacked must be obeyed simply because it is there. Since there are rules in society, it is a valid and reasonable function of the educational process to require and teach that the rule should and must be obeyed. Besides the fact that such an argument would justify any rule, regardless of how unreasonable, arbitrary, or capricious, the Court finds, from the preponderance of the evidence in the case, that, again, requiring adherence to the hair-cut rule is not reasonably related to the professed goal. Instead of teaching respect for society's laws or rules, enforcement of an unreasonable rule undermines respect for other rules and laws which are reasonable and deserve adherence. At best, the rule here attacked teaches only conformity and unreasoning submission to authority; at worst it results in disrespect for all rules and distrust of authority.[19]

19. The Tenth Defense urges the *in loco parentis* position of the school as justification for the regulation. In the absence of any other justification, the doctrine of *in loco parentis* has no applicability where, as here, the parents agree with the child rather than the school. See Breen v. Kahl, *supra,* 419 F.2d at 1037–1038.

In short, while the promotion of decorum, cleanliness, safety, tolerance, and discipline are reasonably related to and a vital part of our educational process, the Court finds, from a preponderance of the credible evidence presented by both sides, that the length of male students' hair is not. It is an irrelevant consideration and always has been. This country was founded by,[20] and has continually paid homage to long haired males.[21] We are confronted at every turn with scientists, artists, writers, and others with long hair who are likewise honored by this country and others, not to speak of jurists who feign long hair by way of a wig to enhance their appearance of dignity.[22] It is too late to substitute demeaning conformity to a School Board's idea of proper appearance for the principles of individual freedom and responsibility upon which this country was built and will hopefully be maintained.

In Texas a free public education is not simply a privilege; it is a right guaranteed by the Texas Constitution, Vernon's Ann.St.[23] Under the Equal Protection Clause of the Fourteenth Amendment, as well as a corresponding provision in the Texas Constitution,[24] any distinction between those who receive this right and those who do not must have a reasonable basis and must reasonably relate to the purpose for which the classification is made. The facts of this case simply fail to reveal any reasonable basis for granting the right of a public education to those with hair above their ears and collar and denying it to those whose hair is longer. The distinction drawn has no reasonable relationship, from the evidence in the case, to its professed purposes or to the educational process as a whole. The overwhelming preponderance of evidence shows, and the Court finds, that the classification of male high school students on the basis of the length of their hair is utterly unreasonable and hence in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[25]

The Court also holds that a high school student's individual choice of the manner in which he will present himself physically to the world so far at least as length of hair is concerned is a fundamental substantive right protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In the words of Chief Judge Johnson, in which this Court fully concurs:

"* * * Although there is disagreement over the proper analytical framework, there can be little doubt that the Constitution protects the freedoms to determine one's own hair style and otherwise to govern one's personal appearance. Indeed, the exercise of these freedoms is highly important in preserving the vitality of our traditional concepts of personality and individuality. In this connection Judge Doyle observed in Breen v. Kahl, supra:

'An effort to use the power of the state to impair this freedom must also bear "a substantial burden of justification", whether the attempted justification be in terms of health, physical danger to others, obscenity, or "distraction" of others from their various pursuits. For the state to impair this freedom, in the absence of a compelling subordinating inter-

---

20. See Lansdale v. Tyler Jr. College, *supra*.

21. Our currency reflects hair styles which would offend the regulation here in question on the $1, $2, $5, $10, $20, $100, $500, $5,000, and $10,000 bills. Postage stamps in the last two regular series reflect these same styles and others.

22. This is not to indicate that long-haired men are necessarily good, talented,

or anything else. The point is that length of hair is irrelevant to any classification other than ability to grow hair.

23. Tex.Const. Art. VII, § 1.

24. *Id.* Art. I, § 3.

25. See Miller v. Gillis, *supra*; Calbillo v. San Jacinto Jr. College, *supra*; Westley v. Rossi, *supra*; Griffin v. Tatum, *supra*, aff'd, 425 F.2d at 203; Zachry v. Brown, *supra*.

est in doing so, would offend a widely shared concept of human dignity, would assault personality and individuality, would undermine identity, and would invade human "being". It would violate a basic value "implicit in the concept of ordered liberty." '

"In short, the freedom here protected is the right to some breathing space for the individual into which the government may not intrude without carrying a substantial burden of justification. Thus, one may not have the right to walk nude down the median strip of a busy highway. But, until one's appearance carries with it a substantial risk of harm to others, it should be dictated by one's own taste or lack of it." [26]

Not only have defendants failed to sustain such a substantial burden, but the Court finds, from the preponderance of relevant credible evidence, that in fact there is no reasonable relationship between the length of male high school students' hair and any alleged disruption of the educational process it is defendants' duty to maintain. This is not a case where the state supported factually the connection between its interest and the regulation in question.[27] Nor is this a case where the state's evidence was uncontroverted.[28] This Court has studied the evidence offered by both sides with utmost care, made its credibility choices, including the weighing of opinions offered by both sides for expertise and underlying basis, and has found nothing to justify the regulation here attacked but undifferentiated and unrealized fears and speculations. A substantial preponderance of the credible evidence establishes that the justifications urged are in fact unreasonable and that the regulation does more harm than good. Finding no rea-

sonable relationship between the forbidden hair style and the educational process, the regulation dictating same is an unjustified infringement of a constitutionally protected right in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[29]

Defendants' efforts to provide the Constitutionally mandated efficient system of public free schools is commendable, as is their effort to include high school students in the regulatory process. This Court recognizes the wide discretion school authorities must have with respect to problems and situations arising in the administration of such schools.[30] They should and must provide and enforce rules and regulations which ensure an effective educational system by minimizing distractions, disruptions, health and safety hazards, and discipline those who are in fact guilty of such transgressions. The regulation before the Court, however, punishes the guilty and innocent alike.

The preamble to the Student Dress Code, Policy 5370, is substantially correct, and the three "principles" which follow it should remain inviolate. The "guidelines" which then follow are clearly helpful "to aid parents and students in selecting the proper attire for the school year" as the Board of Trustees' suggestion, leaving "parents * * * basically responsible for their children's dress and general appearance." But "guideline" No. 1 for boys may justifiably remain only that: a guideline. It may not be used under the Constitution to prevent a child from being admitted to school or to continue in school, nor as grounds for suspension. A student's right to a public free education in Texas and his right, along with his parents, to choose the length of his own hair, both

26. Griffin v. Tatum, *supra*, 300 F.Supp. at 62.

27. See, *e. g.*, cases cited note 8, *supra*.

28. See, *e. g.*, Griffin v. Tatum, *supra*, 425 F.2d at 203–204.

29. See Sims v. Colfax Community School Dist., *supra*; Westley v. Rossi, *supra*; Richards v. Thurston, *supra*; Breen v. Kahl, *supra*.

30. See, *e. g.*, Wood v. Alamo Hts. Ind. School Dist., *supra*, 308 F.Supp. at 552, 554.

protected by the Fourteenth Amendment to the Constitution of the United States, prohibit it.

Accordingly, a Judgment will issue enjoining defendants, their agents and successors in office, and all those acting in concert with them, from refusing to enroll plaintiff Chesley Karr and all those similarly situated in any El Paso Public School for the reason of length of hair, and from further enforcing Guideline No. 1 for boys, of Policy 5370. In light of the possible need for the use of "artificial means" of controlling hair to eliminate safety hazards, enforcement of the Administrative addendum to that portion of Policy 5370 will also be enjoined. The school records must be either expunged of evidence of suspension or absences or made to conform to this opinion by stating that any suspension was based upon an invalid regulation and that absences are therefore excused. In light of the testimony that plaintiff Chesley Karr has obtained the textbooks for the courses he would have taken this fall and, with the aid of private tutors, made effort to keep abreast of the regular curriculum, he must be enrolled as a Junior Student at Coronado High School and allowed to proceed as if initially enrolled at the beginning of the year. Defendants shall give plaintiff Chesley Karr a reasonable time to make up the academic work he has lost by reason of the illegal refusal to enroll him at the beginning of the year, and cooperate with him in doing so. The Judgment entered in accordance herewith shall be final.[31]

## JUDGMENT

On the 9th through the 12th days of November, 1970, came on for trial before the Court the above styled and numbered cause, and the Court having considered the files and records of the case, evidence adduced at the trial, and comments of counsel, and in accordance with the Memorandum of Decision on file herein, enters the judgment following:

It is ordered, adjudged and decreed that the defendants Clifford Schmidt, individually and as Principal of Coronado High School, H. E. Charles, individually and as Superintendent of the El Paso Independent School District, Harold Wiggs, Mrs. William C. Collins, Orba Lee Malone, Paul H. Carlton, Elman A. Chapa, Javier Montez, and Dr. R. A. D. Morton, Jr., individually and as members of the Board of Trustees for the El Paso Independent School District, their agents and successors in office, and all those acting in concert with them, be and they are hereby enjoined from:

1. Refusing to enroll plaintiff Chesley Karr as a Junior Student in good standing at Coronado High School;

2. Enforcing any further guideline No. 1 for boys of the Board's Policy 5370, including the Administrative Regulations added thereto, to deny admittance to or continuation in school or as grounds for suspension therefrom;

3. Maintaining evidence on school records of suspension or absences by reason of violation of said guideline without the explanation that such suspensions or absences were due to enforcement of a regulation later held invalid;

4. Imposing any type of penalties or withholding any privilege or allowing any prejudice from such suspensions or absences;

5. Failing to allow plaintiff Chesley Karr every reasonable opportunity to complete the current semester's work on schedule, or to give reasonable time to make up any academic work lost by reason of his being denied enrollment August 12, 1970, and failing to cooperate with him in so doing.

---

31. This Memorandum of Decision is entered in lieu of findings of fact and conclusions of law, pursuant to Rule 52(a), F.R.Civ.P.