**EAST HARTFORD EDUCATION AS-
SOCIATION et al.**

v.

**BOARD OF EDUCATION OF the TOWN
OF EAST HARTFORD et al.**

Civ. No. H–156.

United States District Court,
D. Connecticut.

Oct. 3, 1975.

Martin A. Gould, Gould, Killian & Krechevsky, Hartford, Conn., for plaintiffs.

Brian Clemow, Coleman H. Casey, Shipman & Goodwin, Hartford, Conn., for Bd. of Ed. of the Town of East Hartford.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

CLARIE, Chief Judge.

This civil rights action was commenced pursuant to 42 U.S.C. §§ 1983 and 1988, joining as party plaintiffs, Richard P. Brimley, the East Hartford Education Association ("EHEA"), and the Connecticut Education Association, Incorporated ("CEA"). The Board of Education of the Town of East Hartford ("Board") hired Brimley as an English and film-making classroom teacher in the public school system. The members of the Board are named as defendants, both individually and in their official capacity as Board members. The complaint asks the Court to declare the dress code policy adopted by the Board on March 6, 1972, to be unconstitutional on its face and as applied to these plaintiffs. They ask the Court to declare the suit to be a class action under Rule 23, Fed.R.Civ.P., thereby including as plaintiffs all teachers who are employed by the Board of Education in the Town of East Hartford. They request that the Court grant a permanent injunction restraining the local Board from maintaining and enforcing the challenged dress code and grant them their

attorney's fees with costs of suit. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1343, 2201 and 2202.

The present posture of the case before the Court is on the defendants' motion for judgment on the pleadings, pursuant to Rule 12(c), Fed.R.Civ.P. The defendants [1] represent that the complaint fails to state a legal basis upon which relief might be granted. The parties agree that there are no material factual issues to be decided and the case could be decided as a matter of law. After reviewing the pleadings, affidavits, exhibits and all other papers on file, the Court finds that the "dress code" prescribed by the Board meets constitutional standards and is not so vague or overly broad as to be unenforceable. The defendants' policy action is within the lawful authority delegated to local school boards by the Connecticut Legislature.

### Factual Background

Plaintiff Brimley represents that he chooses to conduct his classes, while wearing a sport shirt without a tie or a sport jacket or sweater. He asserts the following reasons as the basis for his position: (1) that he wishes to present himself to his students as a person not tied to "establishment conformity"; (2) he wants to symbolically indicate to his students, his association with what he believes to be the ideas of the generation to which the students belong, including the rejection of many of the customs and values and social outlook of the older generation; and (3) he believes that dress of this type enables him to achieve a closer rapport with his students and thus enhance his ability to teach.

Historically, teachers and school administrators in East Hartford schools observed generally understood, but unwritten rules, prescribing a degree of formality in a teacher's classroom attire, which included the wearing of coats

and neckties by men. Plaintiff Brimley, as far back as March 7, 1970, raised the issue by wearing a sport shirt and sweater to school without a coat or necktie. When reprimanded, he filed a grievance under the local teachers' collective bargaining agreement. The grievance was rejected by the school principal, who cited the administration's interpretation of the then existing rule as follows:

"The wearing of a jacket and tie or jacket and turtleneck shirt meets the intent of this memorandum. A sweater and sports shirt without tie are sport wear and therefore not appropriate attire."

When the case finally reached the arbitration stage, the Board claimed that the issue was not arbitrable under the teachers' bargaining contract and while the matter was pending the existing contract expired and a new agreement was negotiated. The latter agreement provided for the filing of grievances with ultimate arbitration if not settled. Much of this background information is taken from the January 25, 1973 findings of the distinguished arbiter, Archibald Cox, who declined to pass upon the issue. His decision, while expressing his personal opinion that the type of grievance was more appropriately a subject of arbitration rather than judicial determination, held that final and binding arbitration on the grievance issues presently before the Court were not jurisdictionally subject to arbitration procedures under the teachers' labor agreement.

The challenged dress code adopted by the Board on March 6, 1972, and thereafter promulgated provided:

"The attire of professional employees during the hours when school is in session must be judged in light of the following:

1. Dress should reflect the professional position of the employee.

---

[1.] On March 18, 1974, the parties stipulated that the action against Board members, Joyce

Ruggles, Barbara Atwood and Eleanor Kepler, individually, was dismissed without costs.

2. Attire should be that which is commonly accepted in the community.

3. It should be exemplary of the students with whom the professional employee works.

4. Clothing should be appropriate to the assignment of the employee, such as slacks, and jerseys for gym teachers.

In most circumstances the application of the above criteria to classroom teachers would call for jacket, shirt and tie for men and dress, skirts, blouse and pantsuits for women. If an individual teacher feels that informal clothing such as sportswear, would be appropriate to his or her teaching assignment, or would enable him or her to carry out assigned duties more effectively, such requests may be brought to the attention of the Principal or Superintendent. An attempt should be made on all levels to insure that the above principles are applied equitably and consistently throughout the school system."

### Issue

Does the local Board of Education have the constitutional right to establish by rule an enforceable minimal dress code guideline for teachers in the local school system; or is the individual teacher's interest in appearing as he pleases, a protected interest in "personal liberty" within the meaning and scope of the first and fourteenth amendments.

### Law

The plaintiffs claim that any teacher has the constitutional right to dress and conduct himself as his own conscience commands, so long as the manner of dress and conduct do not interfere with any legitimate state interest. They assert that the municipality or the state has no more lawful interest in an unoffensive manner of attire, than it does in the bridal chamber. It is their contention that there has been no showing that the exercise of the forbidden right would materially or substantially interfere with the requirements of appropriate discipline for the proper administration of the school.

The legal claim asserted here involves the plaintiff's personal liberty to dress as he chooses during his working hours as a public school teacher, which right he claims to be protected under the Civil Rights Act, 42 U.S.C. § 1983. Available remedies under the local teachers' collective bargaining contract have been exhausted through arbitration and no other such administrative remedies are presently available to gain effective relief. *See Damico v. California,* 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); *McNeese v. Board of Education,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Eisen v. Eastman,* 421 F.2d 560 (2d Cir. 1969).

The United States Supreme Court has not yet ruled upon the issue raised here. However, the Second Circuit has recently considered the case of *Dwen v. Barry,* 483 F.2d 1126, 1130 (2d Cir. 1973), involving a municipal police department grooming code and found that a substantial constitutional issue had been raised by the regulation affecting the plaintiff's hair length. In that case the Court said,

"We hold only that choice of personal appearance is an ingredient of an individual's personal liberty, and that any restriction on that right must be justified by a legitimate state interest reasonably related to the regulation. Here the department has failed to make the slightest showing of the relationship between its regulation and the legitimate interest it sought to promote."

The United States Supreme Court granted certiorari in the aforesaid case and it is presently pending before this term of the Court.

In a similar matter, Justice Black had before him an emergency motion to vacate a stay of injunction in an appellate case related to due process and equal protection, which involved a local

standard for students' hair styles, *Karr v. Schmidt,* 320 F.Supp. 728 (W.D.Texas 1970). The judgment was stayed and Justice Black refused to vacate it. His memorandum, 401 U.S. 1201, 1202, 91 S.Ct. 592, 27 L.Ed.2d 797 (1971), disclosed his own view of the matter when he said,

> "I refuse to hold for myself that the federal courts have constitutional power to interfere in this way with the public school system operated by the States. . . .
>
> "Moreover, our Constitution has sought to distribute the power of government in this Nation between the United States and the States. Surely the federal judiciary can perform no greater service to the Nation than to leave the States unhampered in the performance of their purely local affairs."

It should be noted, however, that the Supreme Court has recently, in a new reach of federal jurisdiction, extended federal due process rules into the local school's disciplinary system. In *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), it required a preliminary notice and hearing before a suspension of ten days could be lawfully imposed on a student, except under emergency conditions. This was the first time that a federal court decided that it, rather than local educational officials or the state legislature, had the authority to determine the local rules applicable to routine classroom discipline of children and teenagers in the public schools. The Court justified this intrusion by identifying a new constitutional procedural right; the right of a student not to be suspended from school without a due process hearing either before or promptly following the suspension.

It was after reviewing Justice Black's opinion that the Fifth Circuit in an 8–7 opinion felt compelled to reverse *Karr v. Schmidt, supra,* in 460 F.2d 609 (en banc 1972) and announced a *per se* rule directing all district courts in the Fifth Circuit thereafter to dismiss forthwith, for failure to state a valid claim, any complaint which "merely alleges the constitutional invalidity of a high school hair and grooming regulation."

A panel of the Seventh Circuit Court recently expressed its unanimous opinion concerning the application of the due process clause as it related to school dress code regulations, when it said in *Miller v. School District Number 167, Cook County, Ill.,* 495 F.2d 658 (7th Cir. 1974):

> "Unquestionably, individual choice in matters of hair style, dress, and overall appearance can reasonably be characterized as an aspect of freedom or 'liberty.' Sometimes the choice reflects a religious conviction, the expression of political faith, a national or family heritage, or simply a personal interest in projecting a special image or character. The word 'liberty' is not demeaned by construing it to include a right to appear as one pleases." (at 663).

> . . . . . .

> "Even if we assume for purposes of decision that an individual's interest in selecting his own style of dress or appearance is an interest in liberty, it is nevertheless perfectly clear that every restriction on that interest is not an unconstitutional deprivation. (at 664).

> . . . . . .

> "If a school board should correctly conclude that a teacher's style of dress or plumage, has an adverse impact on the educational process, and if that conclusion conflicts with the teacher's interest in selecting his own life style, we have no doubt that the interest of the teacher is subordinate to the public interest. (at 667).

> . . . . . .

> "Although the interest of children in associating with persons of their choice is, of course, severely limited by both their parents and the State, we should not ignore the fact that they do have a valid interest in not

being compelled to associate with persons they or their parents consider objectionable. In the classroom, since their presence is compelled, they necessarily must look to the school board for protection of this interest. . . We do not necessarily approve the decision this school board, or any school board, might make . . . we merely hold that as long as no greater interest than that involved in this controversy is at stake, the decision is one that the school board is entitled to make. (at 667–8).

.    .    .    .    .    .

"We therefore hold that even if the individual interest in one's appearance may be characterized as an interest in liberty, the denial of public employment because the employer considers the applicant's appearance inappropriate for the position in question, does not in and of itself represent a deprivation that is forbidden by the Due Process Clause." (at 668).

*Also* see, *Holsapple v. Woods,* 500 F.2d 49, 52 n. 2 (7th Cir. 1974); and *Richards v. Thurston,* 424 F.2d 1281, 1285 (1st Cir. 1970).

The plaintiffs approach the issue from its negative aspect, claiming that unless it can be demonstrated that Brimley's style of dress materially interferes with the discipline or proper administration of his classroom, the Board has no right to regulate it. However, it is a generally accepted fact that the school board in each community of Connecticut has the right by law [2] to make provision for an adequate education for the children of that community; and that they are elected or appointed to do just that.

It almost goes without saying that parents, as well as a majority of the teaching profession, expect teachers to possess and maintain certain qualities: to have knowledge of their subject and the ability to convey it, to be morally above reproach and to be physically clean, neat and wellgroomed. Teachers set an example in dress and grooming for their students to follow. A teacher who understands this precept and adheres to it enlarges the importance of the task of teaching, presents an image of dignity and encourages respect for authority, which acts as a positive factor in maintaining classroom discipline. Most teachers recognize this aspect of their responsibilities, and maintain a standard of good grooming without requiring school boards to adopt rules. Without such regulations, however, some school systems have been faced with male teachers' arriving in the classroom wearing "Bermuda shorts" or similarly inappropriate forms of flamboyant dress.

Common sense teaches that whether or not a male classroom teacher wears a tie and coat will not determine the ultimate measure of his success or failure. The rule simply provides a minimal standard to encourage a degree of formality in the teaching relationship. It is doubtful that anyone would expect to prevail against a school board rule which required a teacher to stand up at all times while actually teaching a class; yet this latter requirement is not a unique rule. There are school boards and superintendents who consider it necessary for effective teaching. Whether teachers or the general public accept this precept as one of major pedagogical importance does not detract from the school board's right to make and enforce such a regulation.

Teachers work within the academic setting only six or seven hours of the total day. Outside this work environment, they are free to dress as they wish, so long as they do not offend the criminal code. A dress code does not impose that same degree of restraint on the liberty of an individual, as does

---

2. Conn.Gen.Stat. § 10–221 provides in part: "Boards of education shall prescribe rules for the management, studies, classification and discipline of the public schools and, subject to the control of the state board of education, the textbooks to be used . .."

such a restriction on the permanent physical facial appearance of an adult, as results from being required to remove a beard or change the fashion of his hair style. Those effects once having been made are continuous in nature and may present a more significant invasion of personal choice and individual liberty.

If plaintiff Brimley does not wish to observe the Board's rule, he is free to go elsewhere and find a school system where conformance to a dress code is not required. His freedom of choice in this respect is unlimited. The Court finds that the local Board rule does not violate due process of law under the fourteenth amendment, and it is not the type of symbolic act that is contemplated to be within the free speech clause of the first amendment. The Court finds that a legitimate governmental interest exists here and the regulation is not unconstitutional because it is overly vague and unenforceable. See *Tinker v. Des Moines School Dist.*, 393 U.S. 503, 505, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

The defendants' motion for judgment is granted pursuant to Rule 12(c), Fed. R.Civ.P., on the grounds that the plaintiffs' complaint fails to state a claim upon which relief can be granted. So ordered.