**Jim TURLEY, a Minor, by his Father Cecil Turley, Plaintiff,**

v.

**ADEL COMMUNITY SCHOOL DISTRICT and Stan Norenberg, Principal, Defendants.**

**Civ. No. 10–114–C–1.**

United States District Court, S. D. Iowa, Central Division.

Feb. 17, 1971.

Dan Johnston, Des Moines, Iowa, for plaintiff.

J. N. Diehl, Newton, Iowa, James E. Van Werden, Adel, Iowa, for defendants.

## MEMORANDUM AND ORDER.

HANSON, District Judge.

The matter before the Court is the constitutionality of a public school regulation which seeks to control the length of students' hair and its enforcement against the minor plaintiff, Jim Turley.

Jurisdiction in this cause is predicated and admitted under Title 42, U.S.C., Sections 1981, 1983 and Title 28 U.S.C., Sections 2281, 2284 on the allegation that the action by the named defendants violates the federal constitutional rights guaranteed to plaintiff under the Fourteenth Amendment to the United States Constitution.

In the fall of 1970, Jim Turley sought to enroll in the Adel High School to complete his high school education. The Adel school district had adopted on August 10, 1970, prior to Turley's attempt at enrollment, a dress code which included the following paragraph:

7. Boys are to be clean shaven. Sideburns should be no longer than to the bottom of the ear. There are to be no mustaches or beards. Hair shall be neat, clean, trimmed, and well groomed.

Prior to the beginning of the school year and the adoption of the aforementioned hair regulation, Turley discussed his eligibility as a student in relation to the length of his hair with defendant Stan Norenberg, principal of Adel High School. Turley at least believed that on the basis of these discussions, he would not be refused admission because of his hair length. However, when Jim Turley went to school for registration, Norenberg referred him to the Superintendent of Schools, Wilford Anderson. Mr. Anderson told Jim Turley that in order to stay in school he would have to comb his hair away from his ears and keep it above his eyebrows, or out of the front of his eyes. In an attempt to comply, Turley cut his hair, and then returned to Mr. Anderson who said it was of an acceptable length and style. However, Principal Norenberg disagreed, a teacher objected, and the parties were unable to make a further accommodation.

The Board of Education met on September 16, 1970, to discuss with plaintiffs Jim and Cecil Turley the appearance of Jim's hair. As a result of that

meeting there was an additional "Ruling on Dress Code":

> At a special board meeting on Wednesday, September 16, 1970, the Board voted to support the Dress Code as previously adopted on August 10, 1970.
>
> The selection of the Dress Code referring to hair was clarified, and boys will be expected to have their hair combed or cut above and behind the ears, combed above eye level in front, and cut so that it is above the collar in back. The school administrators will determine whether any particular hair cut conforms to regulation.
>
> Students will be notified if their hair does not conform to the Dress Code and will be given a specified time to have their hair cut, after which time they will be suspended from school if they do not meet requirements.

Subsequent to this meeting, Mr. and Mrs. Turley received a letter from defendant Norenberg dated September 23, 1970, informing them that their son would be suspended from school beginning September 24, if he does not "have his hair trimmed" and that Mr. and Mrs. Turley were to attend a meeting of the Board of Education on September 28. After that meeting, Mr. and Mrs. Turley were informed by Superintendent Anderson, by mail, that the board had voted unanimously to continue Jim's suspension from school until such time as he complied with the school dress code.

There is no question but that plaintiff's hair length violates that part of the school regulation requiring a male student's hair to be cut above the collar in back. Mr. Turley's hair is of a length considerably below his collar. Other than this, however, plaintiff's hair style insofar as combing it out of the eyes and behind the ears is apparently in conformity with the code. The Court views the issue before it to be thus: Does the Adel Community School District's regulation requiring a male student's hair to be cut above his collar in the back violate that student's constitutionally protected rights?

The concern regarding plaintiff's hair length must be viewed in the context of this Court's decision in Sims v. Colfax Community School District, 307 F.Supp. 485 (S.D.Iowa 1970). In *Sims*, the Court recognized the right of school districts to adopt reasonable regulations but also stated that a student's choice of hair style was constitutionally protected[1] and that this right could be infringed only upon a showing by the rule promulgator that the rule was in fact reasonable. Both prior to and subsequent to *Sims*, the federal courts have had numerous occasions to discuss the subject of hair. There is a decided split of authority. Among the cases upholding the school districts in enforcing hair regulations are: Ferrell v. Dallas Ind. School District, 392 F.2d 697 (5th Cir. 1968); Stevenson v. Wheeler County Board of Education, 306 F.Supp. 97 (S.D.Ga.1969); Farrell v. Smith, 310 F.Supp. 732 (D.Me.1970); Giangreco v. Center School District, 313 F.Supp. 776 (W.D.Mo.1969); Brownlee v. Bradley County Tenn. Board of Education, 311 F.Supp. 1360 (E.D.Tenn.1970); Davis v. Firment, 408 F.2d 1085 (5th Cir. 1969); Leonard v. School Committee of Attleboro, 349 Mass. 704, 212 N.E.2d 468 (1965); Crews v. Cloncs, 303 F.Supp. 1370 (S.D.Ind.1969); Bishop v. Colaw, 316 F.Supp. 445 (E.D.Mo.1970). Among those cases which have struck down school hair regulations as unreasonable are the following: Richards v. Thurston, 304 F.Supp. 449 (D.Mass.

---

1. In *Sims*, this Court adopted a Fourteenth Amendment analysis concerning the constitutionality of hair regulations. The Court deems it unnecessary therefore to reiterate that analysis. Other courts have adopted different constitutional grounds in deciding these hair cases. An excellent discussion with cited authority pertaining to the three constitutional theories upon which school hair rules may be examined is found in Comment, Public Schools, Long Hair, and the Constitution, 55 Iowa L.Rev. 707 (1970).

1969); Zachry v. Brown, 299 F.Supp. 1360 (N.D.Ala.1967); Brick v. Board of Education, 305 F.Supp. 1316 (D.Colo. 1969); Westley v. Rossi, 305 F.Supp. 706 (D.Minn.1969); Sims v. Colfax Community School District, 307 F.Supp. 485 (S.D.Iowa 1970); Crossen v. Fatsi, 309 F.Supp. 114 (D.Conn.1970); Reichenberg v. Nelson, 310 F.Supp. 248 (D.Neb.1970); Watson v. Thompson, 321 F.Supp. 394 (U.S.D.C., E.D.Tex., Jan. 6, 1971).

All the above cited cases contain common threads. With very few exceptions, the courts recognize that a student's right to wear long hair is entitled to constitutional protection and the particular hair regulation is carefully scrutinized to ascertain whether a reasonable basis in fact exists for the rule. In those cases where the school has presented objective and factual evidence to show disruption or interference with orderly school administration, the hair rule has been upheld. *E. g.*, Giangreco v. Center School District, *supra*. In other cases, like *Sims*, where the school has failed to demonstrate the requisite disruption, the hair rule is struck down. Cases cited *supra*. Thus, in order for this Court to uphold this rule as reasonable, it is incumbent upon the defendants to show that this particular hair rule is in fact reasonable.

The defendants seek to support their hair rule and plaintiff Jim Turley's suspension for violating it primarily on three bases:

1. That there is a definite correlation between a student's hair length and his academic achievement, his discipline, his general opinions and the way he conducts himself in school.

2. That the hair rule prevents disruption of the school by students who oppose long hair and who express their opposition by boisterous and unruly conduct in school and by violent attacks upon students who do not conform to the hair regulation.

3. That the political constituency of the defendant Adel Community School District and some of its teachers oppose those characteristics of personal appearance which are prohibited by the hair rule and failure of the defendant school district to promulgate and enforce the rule would cause the school to lose support required for its welfare.

These grounds will be examined seriatim and in the context of the evidence presented.

The school contends there is a relationship between the matters proscribed by the hair rule and poor scholarship, discipline, attendance, and intelligence. If true, and if the relationship is compelling or material and substantial, the rule and Jim Turley's suspension are constitutionally permissible. Ferrell v. Dallas Independent School District, *supra*; Sims v. Colfax Community School District, *supra*. Also, Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 508, 89 S.Ct. 733, 21 L.Ed.2d 731.

Superintendent Anderson testified that after dress and hair rules were relaxed in response to the *Sims* decision in the spring 1970 semester, "there was a general let-down in the appearance of the students." The superintendent then observed that students unconcerned about their appearance would tend to be defiant to other rules and they would tend to have lower grades, more tardiness, and absences. But he admits students with unkempt short hair are not suspended, and that it is possible to have hair longer than the rule permits, be well-groomed and neat, and yet be suspended.

The principal, Mr. Norenberg, did not testify as to any observations as to the relationship between the Code and the education of students except that "learning to follow the rules is a very definite part of education * * *." That may be true, except to the extent it denotes unquestioning obedience which is, of course, inimical to free men in a free so-

ciety. This argument was advanced by the defendants in *Sims, supra,* and the response was that:

"If such an argument was accepted, then any rule, no matter how arbitrary, capricious or abhorrent to our democratic process, could be justified by school officials." Sims v. Colfax, supra, 307 F.Supp. 488–489.

Furthermore, one may reasonably argue that the best protection against the loss of respect for authority that accompanies defiance of rules is to make rules that are reasonable and supportable. It is difficult to understand how the lesson of obedience to arbitrary authority can be of educational value in a free society where "schools may not be enclaves of totalitarianism". Tinker, *supra,* 89 S.Ct. at 739.

The defendants presented testimony by the Assistant Junior-Senior High School Principal at the Adel Community Schools, Bill Kimber. Mr. Kimber has a bachelor of arts degree in education and a master of arts degree in secondary education. Mr. Kimber testified that he feels there is a definite correlation between a student's dress and his academic achievement, his discipline, and "his general opinions or the way he conducts himself in school" and this reflects itself in school discipline.

He based this opinion on a study he conducted in an effort to correlate long hair and academic achievement. He isolated 18 students who, at the beginning of the 1970 fall semester appeared for enrollment in the defendant school district with hair longer than the rule allowed. 15 of these students were high school students and three were in junior high. The study consisted of comparing this group of 18 with the rest of the student body from the beginning of that semester to time of trial. The 19 students in the testing group were in compliance with the hair rule during the period of Kimber's study. Jim Turley was not included in the survey since he had elected to remain out of school rather than conform to the hair rule. Mr.

Kimber measured the students' Iowa Test and Educational Development scores and their attendance records, including tardiness.

He found that in the group which did not conform to the hair rule at the beginning of the semester, there were 41 incidents of tardiness compared to an average of less than one tardiness per student throughout the entire student body. Mr. Kimber testified there would be about 150 per cent more incidents of tardiness in the group of students who did not conform to the hair rule at the beginning of the year than in the rest of the student body. As to absences, the entire high school average attendance was 95.68 per cent. In the 18 students who did not conform to the code at the start of the year, the attendance average during the fall, 1970, attendance was 89.6 per cent. In the junior high group, consisting of only three students, their attendance was 76.35 per cent as compared to 97.32 per cent for the junior high school student body as a whole.

Another factor measured was the relative scores on the Iowa Tests of Educational Development, a means of measuring school achievement with respect to the rest of the state and nation developed by the University of Iowa. Of those in the high school who did not conform to the hair rule prior to commencement of the school year, 11 out of the 15 fell below their individual class average. Mr. Kimber also found that during the fall, 1970, semester 12 out of the 17 students who did not conform to the code at the start of the school year were failing one or more classes.

From this study Mr. Kimber is of the opinion that "there is a direct relationship between the violation of the dress code by wearing long hair and the educational aims of the defendant school system."

At the outset, the Court notes that the sole evidentiary basis for these computations is Mr. Kimber's testimony. No records were offered into evidence to support the accuracy of Mr. Kimber's

testimony. Regardless of the evidentiary support for Mr. Kimber's testimony, he has provided the Court with enough information upon which to judge the efficacy of his conclusion that there is a definite correlation between long hair and scholastic achievement. An evaluation of this foundation, the study which Mr. Kimber conducted, shows his conclusion to be unsupported in at least two ways.

The first is that the students who were compared to the general student body did not have long hair, or otherwise fail to conform to the dress code, during the period of the study. These were students who came to school originally out of conformity with the code, were told they would have to either conform or be suspended, and did conform. Therefore, it is impossible to say that had these students attended school without conforming to the hair code, their scholastic achievement would have been any different from what it was during the period of the study when they attended school in conformity with the code.

The other deficiency in Mr. Kimber's study is that there is no attempt to correlate the academic standing and attendance records of these 17 students with the rest of the student body prior to their violation of the hair code. In other words, the study does not tell us what effect the events related to the hair rule which occurred in the fall of 1970 may or may not have had upon the achievements of these students in comparison with their fellows.

In short, defendants' contention that a definite correlation exists between long hair and academic achievement is not only unsupported by any competent evidence but borders on the ridiculous. An

argument that long hair produces absenteeism or a lower intelligence level is nothing short of ludicrous. Correlation does not show causality. Defendants' attempt at employing such an obviously unscientific statistical method can only be characterized as a perversion of proper statistical analysis.

It should be noted that the plaintiff offered the testimony of Mr. Richard Klahn, who is Director of Secondary Education for the Des Moines School District. He has a master of education degree in school administration and doctorate from the University of Iowa in education. As Director of Secondary Education he is responsible for the administration and education of 18 secondary schools (grades 7 through 12) in the Des Moines school system. This involves the supervision of approximately 16,000 students in these grades and a teaching staff of approximately 1,000. Mr. Klahn testified that the Des Moines schools leave the problem of hair length up to the students and their parents. He quoted a statement of policy by Dr. Dwight Davis, Superintendent of the Des Moines school system, stated October 21, 1969.[2] Mr. Klahn testified that the policy remains in effect at the school and there had been called to his attention no material or substantial interference with the educational process in the Des Moines school system because of the way the students have worn their hair. He also testified that it would not be uncommon to see male students in the Des Moines school system with hair the length of Jim Turley's.

As with his brother educators from the Adel Community School District, Mr. Klahn is a qualified expert on the learning process. He was asked for an opinion about whether there is a connec-

2. The Des Moines policy, stated at a school board meeting by Dr. Davis in response to a question from a high school student, is:
 "The administration's primary concern is the learning process that goes on in the schools and not in the matter of dress or hair cuts. We are not con-
 cerned as long as the students are good citizens and progressing in their school work and so long as there are no health problems to himself or those around him. We believe it is up to the parents and the students to decide on the student's dress." Plaintiff's Exhibit 2.

tion between the length in which a student wears his hair and his ability, or that of those around him, to participate in the educational process. For a foundation, he stated that he was familiar with the literature in the psychology of learning having taught education at the university level and been involved as a professional educator for 18 years and knows of no research to support a correlation between hair length and ability to learn. For these reasons, the Court concludes that the defendants' evidence fails to demonstrate any meaningful correlation between scholastic achievement and the hair rule in question.

The second reason defendants assert in support of the hair rule is based on disruption and distraction. Defendants cite various examples of disruption in the school caused by those who opposed the length of their fellow students' hair. Supposedly, some student anonymously wrote on a bulletin board in a school the phrase, "Cut your hair". Principal Norenberg testified that as students passed from class to class in the halls he had occasionally heard someone shout, "Cut your hair. Cut your hair." Mr. Norenberg also testified that a student who had long hair was physically beaten by a drop-out from a small town south of Adel at a place where Adel students were building a homecoming float.

In the first place, these asserted acts of disruption are so vague as to substance that the Court is hard-pressed to give serious consideration to them. For instance, the fact that a long haired student was beaten up hardly establishes that it was his long hair that initiated the conflict. As far as the Court knows, the fight could have been over any one of a dozen matters in which young men feel compelled to argue physically their case.

Aside from this and even assuming such acts have been sufficiently described, this type of testimony provided the evidentiary basis for the decision in Ferrell v. Dallas Independent School District, *supra*, 392 F.2d at 700–701. As noted, there is a difference in the quantum of evidence concerning this type of disruption in the *Ferrell* case and the instant case. However, this Court is inclined to the view that constitutional rights may not be subordinated because of possible violent or disruptive action by others to their exercise, at least until some effort is made to control the disruption itself. In Sellers v. Johnson, 163 F.2d 877 (8th Cir. 1947) our Court of Appeals rejected:

> "The theory that a group of individuals may be deprived of their constitutional rights of assembly, speech and worship if they have become so unpopular with, or offensive to, the people of a community that their presence in a public park to deliver a Bible lecture is likely to result in riot and bloodshed * * *. Under such a doctrine, unpopular political, racial, and religious groups might find themselves virtually inarticulate."

Also close on point is the Supreme Court's decision in Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949). In other words, the amount of disruption defendants evidence shows is, in the first place, insufficient to constitute a material and substantial disruption to the school, and, secondly, irrelevant in the absence of some showing that the disruption itself could not be controlled without suppressing Jim Turley's constitutional right to be let alone.[3] Furthermore, at least one federal district court in Texas seemingly rejects the Fifth Circuit's approach in *Ferrell*. See Watson v. Thompson, *supra*.

---

3. There was some suggestion that plaintiff's long hair might conflict with rules of the Iowa High School Athletic Association, a private association of schools participating in voluntary competitive athletics. But the evidence did not show Jim Turley's education required participation in these activities or that he even desired to participate in athletics. Thus, that potential issue is not before the Court and will not be discussed.

If it has not already been impressed strongly enough upon school administrators, the Court reiterates that disruption arising out of other students hostile reactions to students whose appearance is objectionable to them is not the type of disruption the majority of courts will accept. The disruption must flow from the hair itself, namely health problems, safety problems, distraction of other students in their academic pursuits or actual disruption by the long haired student himself.

There is no evidence in this case that plaintiff's long hair was dirty or unsanitary and thus constituted a health problem. Certainly long hair and health are not synonymous per se.[4]

As for safety, again there is no evidence that long hair in the Adel school system was a safety hazard that could not be corrected by methods other than requiring one's hair to be cut. It must be obvious to all that any student, male or female, with long hair who wished to engage in such academic pursuits as laboratory work or shop work could be required to wear protective headgear.[5]

In regard to distraction, there is very little evidence that classwork was disrupted to any significant extent. No students testified that long hair worn by other students would or did distract them in their school work. The only concrete evidence presented by defendants in regard to disruption in a class room was an incident where plaintiff stood up in class and asked the teacher what he thought about plaintiff's hair. No evidence was presented as to the nature of the class. The Court believes such a question could be appropriate in a government class where constitutional protections were being discussed but entirely inappropriate in a mathematics class. It would appear that if the question were asked in the latter situation, the teacher could simply state that this was neither the time or place for such

questions. If the student persisted, then his presence would be disruptive and he could be asked to leave the class not because his hair is long but because he is in fact disrupting the class. In any event, this one isolated incident is so vague that it cannot be considered as sufficient to demonstrate the required disruption.

The third reason defendants cited in support of their rule was the strong feeling among citizens of the Adel Community School District that the rule was proper and the belief on the part of the school officials that the rule was necessary for the defendant school district to enjoy the continued support of its teaching staff and its citizens. The president of the school board, Richard Ehrhardt, testified that the district anticipates the need for a bond issue in the near future to build a new school building. It was his opinion as well as that of Superintendent Anderson that the adverse reaction of citizens to the relaxing of the dress code to allow long hair might well jeopardize the ability of the defendant district to obtain this necessary vote, as well as put it in jeopardy in other ways.

The testimony of school board President Ehrhardt is instructive on this point. His daughter is a sixth grade student, about to enter the Junior High School which is housed in the same building as the Senior High School in Adel. He expressed concern that no "undue influence" be exerted upon her, and that this type of concern contributes to community opposition to long hair in school. He testified that "rightly or wrongly", Adel residents draw associations between long hair and school riots, the "hippie class", and the "drug element". Mr. Ehrhardt admitted this is a stereotype but that the people of Adel believe that because some people having long hair are involved with drugs and riots, that if long hair is allowed in the school, drugs and riots will follow.

---

4. See Comment, Public Schools, Long Hair, and the Constitution, 55 Iowa L. Rev. 707, 710–11 (1970).

5. *Id.*

There is no evidence that Jim Turley has anything to do with drugs or riots. He has a right to be judged as an individual citizen, not for what others may have done. Community prejudices and stereotypes are not permissible criteria for classifying citizens under the Fourteenth Amendment.

Superintendent Anderson said he believed the majority of his teaching staff desired the hair rule and that he believed two members of the staff would resign were it repealed. There are 34 teachers and administrators in the defendants' junior high school and senior high school.

Defendants in effect argue that a repeal of the hair rule would be inconsistent with the wishes of a majority of the citizens of the school district as well as the majority of the teaching staff. Defendants have failed however to support this contention with sufficient evidence unless this Court were to accept, which it will not, that these few individuals who testified have the prerogative to speak for the entire community. Such is not only presumptuous but, also, without more, their conclusions are mere conjecture.

Furthermore, aside from evidentiary problems, this sort of argument has been advanced before in a different but analogous situation. After the United States Supreme Court's decision in Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955), the Little Rock, Arkansas, school board asked to delay the desegregation of Central High School arguing that due to "extreme public hostility (to desegregation) the maintenance of a sound educational program at Central High School, with the Negro students in attendance, would be impossible." The Court found that indeed military assistance or its equivalent would continue to be needed to enforce desegregation and that the educational process of all the students in the school system will continue to suffer if the conditions which then prevailed continued. But the Court denied the request for delay emphasizing that the constitutional rights of the Negro children could not be sacrificed or yielded to violence and disorder by others. Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19 (1958). In reality, this argument must fall for the same reason that the argument that the rule is necessary to prevent unruly conduct by other students must fall. Jim Turley's constitutional rights cannot be forfeited simply because his fellow citizens object to its exercise. Such a precedent would result in nothing more than mob tyranny.

The truth of the matter is that most hair rules are promulgated largely, if not entirely, because there are people who are repelled by the sight of a male with hair length and style which in times past has been almost exclusively reserved for the fairer sex. These same persons have regarded long hair as a trademark or symbol of evil activity and as a representative of ideas to which they are opposed. The reasoning urged above is insufficient to substantiate abrogation of fundamental rights.

The Court firmly believes that it is the parents who are primarily responsible for their child's appearance. The shop-worn concept of schools being in loco parentis is not accepted by this Court. Abnegation of parental responsibility should not be accepted or condoned. It is certainly true that some parents are content to abdicate their responsibilities to school administrators. However, the Court is more concerned about those parents who believe their child should be permitted to wear a certain hair style but a school rule forbids it. In that situation, rather than the school acting even in loco parentis, the school is in reality usurping what the Court believes to be a function reserved to the parents.[6] Of course, as this and other opinions hold, there are proper areas in respect to appearance in which the school can impose reasonable controls remembering that the school must

6. See n. 2 supra.

be prepared to demonstrate the need for such rules.

Perhaps it is asking too much for this Court to expect this case to settle once and for all the controversy decided today. It would no doubt be regarded as judicial conceit to say that it does. Nevertheless, it will require the function of reasonable minds out of the presence of charged personal feelings or the simulation of such feelings for one's personal gain or ego.

 Most assuredly, it is common knowledge and evident to all concerned from the mass media as well as personal observation and contact that for whatever reason, men, young and old, in every profession and walk of life, have and are changing their personal appearance as it relates to hair growth and style in varying degrees. This individual right to govern one's appearance is constitutionally protected. In the final analysis, a student is entitled to the same protection unless good reasons can be shown for some restriction. See Tinker v. Des Moines Independent Community School District, *supra*.

 Plaintiffs seek to have this case treated as a class action. However, as the instant case, *Sims*, and all the other hair cases previously cited make clear, the test of reasonableness as it applies to school hair regulations is one involving particular factual situations. The Court, therefore, finds the instant case cannot be properly maintained as a class action.

This case will, of course, inure to the benefit of anyone in a like situation in this district. Of course, the Court thought the same to be true of the *Sims* case but there have been some indications to the contrary. It may well be that at some future time if these cases persist to occupy the Court's attention, the Court will permit a class action to ensue.

 In conclusion, defendants have not demonstrated the reasonableness of the hair rule as it pertains to hair over the collar. The rule is thus unconstitutional and impermissible.

Accordingly, it will be ordered that the hair rule contained in the Adel Community School District pertaining to hair over the collar is unconstitutional and that the enforcement of said hair rule by defendants is restrained against the named plaintiff.

It will be further ordered that Jim Turley be reinstated as a student in the Adel Community School District without academic prejudice and that any records of his suspension be expunged.

It will be further ordered that the cause shall not be maintained as a class action.

It will be further ordered that the costs of this action be taxed to defendants.

It is ordered that the foregoing shall constitute the Findings of Fact, Conclusions of Law and Order for Judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.