Bernard S. Meyer, J.
Control over the hair style of a mem-
ber of a volunteer fire department is at issue in this article 78 proceeding. A prior related proceeding against the same Board of Fire Commissioners was dismissed without reaching the constitutional question attempted to be presented, because the regulation had not been validly adopted (Matter of Thompson v. Board of Fire Comrs., 64 Misc 2d 477, and 479). On October 13, 1970, the Board of Fire Commissioners approved Bulletin 2-69, as clarified by the chief’s letter of October 13, 1970. As a result of that approval it is now the rule governing all members of the department that:
“ A) Hair must not touch the collar.
B) Sideburns must not extend below the ear.
C) Mustaches must be neatly trimmed not extending below the lower lip.
D) No beards allowed.”
Petitioner Hunt has been suspended from membership in the department for one year, pursuant to section 209-1 of the General Municipal Law after hearings before a special officers ’ meeting of the department and before the District’s Board of Fire Commissioners, on charges that his hair and sideburns violated provisions A and B above. He concedes that his hair length and sideburns violate the bulletin, that he has been accorded procedural due process in the presentation of the charges, and that his refusal to conform to the bulletin constitutes misconduct on his part warranting removal or suspension under section 209^-1 *263 of the General Municipal Law unless, as he vigorously contends, it violates his constitutional rights. The board equally as vigorously argues, first, that on becoming a member of the department petitioner agreed to abide by its rules, regulations and by-laws and has no constitutional right to be a fireman, and second, that its regulation is necessary to create a uniform appearance among firemen of the department and in the interest of safety. For the reasons hereafter stated the court holds that the bulletin and the order suspending petitioner made in enforcement of the bulletin violate petitioner’s constitutional rights.
A preliminary question arises because, though the application is directed to the May 5,1971 order of the board suspending petitioner, it necessarily involves the constitutionality of the regulation adopted by the board on which that order was based. An article 78 proceeding is generally an inappropriate vehicle to test the constitutionality of legislative action (Matter of Overhill Bldg. Co. v. Delany, 28 N Y 2d 449, 458; Matter of Lakeland Water Dist. v. Onondaga County Water Auth., 24 N Y 2d 400, 407). The rule is different when the issue is whether a statute, ordinance or regulation has been applied in an unconstitutional manner (Matter of Overhill Bldg. Co. v. Delany, supra; Matter of Diocese of Rochester v. Planning Bd., 1 N Y 2d 508, 521), but the parties have stipulated in a conference with the court that the evidence presented at the hearing of March 22, 1971 was directed not to whether John Hunt’s hair length and sideburns prevented a face mask from making a proper seal when applied to his face, but to putting before the board (and the court) the evidence concerning the relationship between hair length and safety on the basis of which the board in its legislative capacity approved the bulletin. It is, thus, clear that what is at issue is not the sufficiency of the evidence to sustain the order of dismissal as to John Hunt, but the constitutional validity of the bulletin upon which the order was based. Such being the case, and the board as the ‘ ‘ legislative body ’ ’ being the only necessary party to such an action, the court will exercise its power to treat the proceeding as an action for a declaratory judgment (CPLB, 103, subd. [b]) in which the constitutionality of the bulletin may properly be considered, and the papers now before it as a motion for summary judgment in that action. Since the procedure under CPLB 7804 (subd. [e]) is “ exactly analogous to summary judgment ” (Matter of Teperman v. Atcos Baths, 7 A D 2d 854, 855), there is no unfairness to the board in doing so.
The board’s argument based on John Hunt’s promise in his application to ‘ ‘ obey the rules, regulations, by-laws and all other *264 laws and directions of the officers elected or appointed over me according to law ’ ’ makes it appropriate for the court to note that Hunt’s removal was by the board rather than the members of the department and that, therefore, the last sentence of section 209-1 of the General Municipal Law has no bearing on this case (see Matter of Acker v. Board of Fire Comrs., 25 A D 2d 282; Matter of Schenck v. Fire Council, 35 Misc 2d 685). The predicate for the board’s argument is, rather (as the language of paragraph 10 of Commissioner Wernersbach’s affidavit shows), Mr. Justice Holmes’ statement in McAuliffe v. Mayor of New Bedford (155 Mass. 216, 220) that “ petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman ’ ’, or as it was more recently put in Matter of Krolick v. Lowery (32 A D 2d 317, 322, affd. 26 N Y 2d 723, cert. den. 397 U. S. 1075), with respect to firemen disciplined for failure to submit to a blood test for alcohol and failure to use a safety belt, “ There is no constitutional right to be a fireman. When one voluntarily elects to be a fireman he swears, voluntarily, to obey the orders and directions of his superiors to the best of his ability. The oath does not contain the reservation that obedience is conditioned upon personal agreement with such order. Necessarily he waives certain rights when he takes the oath.”
While the distinction drawn by Mr. Justice Holmes and in Matter of Krolick v. Lowery (supra) was espoused in Bailey v. Richardson (182 F. 2d 46, affd. by an equally divided court, 341 U. S. 918), the Supreme Court has in a case decided as recently as June, 1971, stated that it “ now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 1 right ’ or as a ‘ privilege ’.” (Graham v. Richardson, 403 U. S. 365, 374; see, also, Gardner v. Broderick, 392 U. S. 273; Sanitation Men v. Sanitation Comr., 392 U. S. 280; Pickering v. Board of Educ., 391 U. S. 563; People v. Samuel, 29 N Y 2d 252 [decided Nov. 17, 1971]). Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv. L. Rev. 1439; Van Alstyne, The Constitutional Rights of Public Employees: A Comment on the Inappropriate Uses of an Old Analogy, 16 U. C. L. A. L. Rev. 751; Developments in the Law — Academic Freedom, 81 Harv. L. Rev. 1045, 1079).
The Board of Fire Commissioners may promulgate such rules and regulations as are reasonably necessary for the effective conduct of the departments within its district, but those rules and regulations are subject to applicable constitutional, as well as statutory, limitations (Kane v. Walsh, 295 N. Y. 198, 207; see Matter of O’Reilly v. Grumet, 284 App. Div. 440, 444, affd. 308 N. Y. 351). A rule which denies or unreasonably limits a con *265 stitutional right of a public employee is invalid, not because there is a. constitutional right to public employment, but because the constitutional rights of all citizens,, public employees, included, may only be restrained for a reason rationally related to the public interests, which sufficiently benefits the public interest to outweigh the impairment of the individual’s constitutional right, and for which there exists no alternative less destructive of the individual’s constitutional right (United States v. O’Brien, 391 U. S. 367; Bates v. Little Rock, 361 U. S. 516; Beilan v. Board of Educ., 357 U. S. 399; Slochower v. Board of Educ., 350 U. S. 551; Birnbaum v. Trussell, 371 F. 2d 672; Bagley v. Washington Township Hosp. Dist., 65 Cal. 2d 499; Van Alstyne, op. cit. supra, 81 Harv. L. Rev. at pp. 1449, 1462; and see Matter of Di Maggio v. Brown, 19 N Y 2d 283, 287). The fact that public employment may be denied does not mean that it may be subjected to unreasonable conditions, or that it may be granted on condition that constitutional rights be waived (Pickering v. Board of Educ., supra, 391 U. S. at p. 568; Bagley v. Washington Township Hosp. Dist., supra, 65 Cal. 2d at pp. 506-508; Van Alstyne, op. cit. supra, 81 Harv. L. Rev., at p. 1445). It follows that John Hunt’s promise to obey department rules must be read as requiring only that he comply with rules not in violation of his constitutional rights, and not as a waiver of such rights.
Implicit in what has been so far written is that a volunteer fireman is a public employee. The record not being entirely clear in this respect, the attorneys in conference with the court have stipulated that the Fire District was created by the County Board of Supervisors pursuant to section 38 of the County Law as enacted by chapter 16 of the Laws of 1909. That section was repealed by chapter 717 of the Laws of 1933, and the power to establish Fire Districts outside incorporated villages was transferred to the Town Board (Town Law, art. 11). Hnder the former County Law (§ 38, subd. 3) the Fire District Commissioners had, and under the present Town Law (§ 176, subd. 11) the commissioners have, control of the fire departments in the district and the power to make rules and regulations for their governance and discipline (see, also, General Municipal Law, § 209-1). Though the Massapequa Fire Department, Inc., is a separate entity from the district, and election to membership in the department is by its members and according to its by-laws, the membership is effective only when approved by the Board of Fire Commissioners or when they fail to act on a member within 40 days after notice of his election (Town Law, § 176-b). Moreover, though department members are volunteers and are not paid, emoluments (e.g.— exemption from jury service, Judi *266 ciary Law, §§ 507, 599, 665) may result from service. For purposes of the constitutional question presented by this action, the relationship between a member of the Massapequa Fire Department and the Board of Fire Commissioners of the Massapequa Fire District is, therefore, that of governmental employer and public employee.
Does that relationship authorize the control over the length of a department member’s sideburns and hair that the board in approving the bulletin has established? Discipline imposed upon both reservists and Army regulars who failed or refused to conform to military regulations concerning length of sideburns or hair has been sustained (Anderson v. Laird, 437 F. 2d 912, cert. den. 404 U. S. 865; Doyle v. Koelbl, 434 F. 2d 1014, cert. den. 402 U. S. 908; Gianatasio v. Whyte, 426 F. 2d 908, cert. den. 400 U. S. 941; Raderman v. Kaine, 411 F. 2d 1102, cert. dsmd. 396 U. S. 976; Konn v. Laird, 323 F. Supp. 1; Krill v. Bauer, 314 F. Supp. 965; see Smith v. Resor, 406 F. 2d 141; Byrne v. Resor, 412 F. 2d 774). The basis of decision in those cases is the reluctance of the courts to interfere in military matters, because they are ‘ ‘ ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have ’ ’ (Warren, The Bill of Rights and the Military, 37 N. Y. U. L. Rev. 181, 187); and as to the similar argument sometimes made as to students, see Note, Bringing the Vagueness Doctrine on Campus, 80 Yale L. J. 1261, 1277. The restraint is rooted in ‘ ‘ the tradition of our country, from the time of the Revolution * * * [supporting] the military establishment’s broad power to deal with its own personnel” (Warren, op. cit., at p. 187). However, it is not absolute. When the soldier has been denied a fundamental right he can obtain redress in the civil courts (Burns v. Wilson, 346 U. S. 137 [due process]; Cortright v. Resor, 325 F. Supp. 797, revd. on the facts, 447 F. 2d 245'[freedom of speech]; Warren, op. cit., at p. 188).
On analogy to the military cases and in light of the paramilitary nature of the police force, regulation of the length of hair and sideburns worn by policemen has been sustained (Dwen v. Barry, 336 F. Supp. 487 [Mishler, C. J., E. D. N. Y., Nov. 8, 1971, Index No. 71-C-1020); Matter of Taxter v. Looney [Levine, J., Nassau County Sup. Ct., Index No. 13898/69],. and see People ex rel. Guiney v. Valentine, 274 N. Y. 331; People ex rel. Masterson v. French, 110 N. Y. 494; Matter of Wiegmann v. Broderick, 27 A D 2d 734). Neither tradition nor the need for discipline has been argued in the other hair cases involving public employees that the court has found, be they probation officers (Forstner v. City & County of San Francisco, 243 Cal. *267 App. 2d 625; Burlingame v. Milone, 62 Misc 2d 853); teachers (Finot v. Pasadena City Bd. of Educ., 250 Cal. App. 2d 189; Braxton v. Board of Public Instruction of Duval County, 303 F. Supp. 958; Lucia v. Duggan, 303 F. Supp. 112); or firemen (Lindquist v. City of Coral Gables, 323 F. Supp. 1161). The board suggests no similar tradition with respect to firemen,, and while its answering affidavit uses the word discipline, it nowhere suggests why discipline is needed in a fire department or in what way hair style interferes with that need. The military and paramilitary cases are not authority in support of the bulletin here in issue, therefore, and are no obstacle to summary declaratory judgment.
While neither John Hunt’s oath of office nor the nature of his work subjects him to indiscriminate regulation of his hair style, he may, as has already been noted, be subjected to regulation for a reason rationally related to the public interest, of sufficient benefit to that interest to outweigh impairment of his constitutional right, and for which there exists no alternative less destructive of that right. Application of that rule to the board’s attempt to regulate hair style turns upon whether there is a constitutional right to determine one’s own hair style, and upon whom rests the burden of proving rational relationship to the public interest. Since there are now more than 50 hair cases in the books, detailed analysis would unduly extend this opinion, but their holdings may be summarized as follows:
1. A few cases have held that there is no such right (Gfell v. Rickelman, 441 F. 2d 444; Valdes v. Monroe County Bd. of Public Instruction, 325 F. Supp. 572; Cordova v. Chonko, 315 F. Supp. 953; see Rumler v. Board of School Trustees, 437 F. 2d 953; Livingston v. Swanquist, 314 F. Supp. 1) or that Federal courts should abstain (Stevenson v. Board of Educ. of Wheeler County, Georgia, 426 F. 2d 1154, cert. den. 400 U. S. 957; Alexander v. Thompson, 313 F. Supp. 1389; see Schwartz v. Galveston Independent School Dist., 309 F. Supp. 1034) and see the opinion of the late Mr. Justice Black, acting in his capacity as Circuit Justice, in Karr v. Schmidt (401 U. S. 1201).
2. Some cases have assumed that there is a constitutional right and that the burden is upon the State to show reasonable relation, but concluded on the evidence that reasonable relation had been shown (Whitsell v. Pampa Independent School Dist., 439 F. 2d 1198; Wood v. Alamo Heights Independent School Dist., 433 F. 2d 355; Jackson v. Dorrier, 424 F. 2d 213, cert. den. 400 U. S. 850; Ferrell v. Dallas Independent School Dist., 392 F. 2d 697, cert. den. 393 U. S. 856; Davis v. Firment, 408 F. 2d 1085; Freeman v. Flake, 320 F. Supp. 531; Southern v. Board *268 of Trustees for Dallas Ind. School Dist., 318 F. Supp. 355; Christmas v. El Reno Bd. of Educ., 313 F. Supp. 618; Brownlee v. Bradley County, Tennessee Board of Educ., 311 F. Supp. 1360; Akin v. Board of Educ. of Riverside Unified School Dist., 262 Cal. App. 2d 161, cert. den. 393 U. S. 1041).
3. By far the greater number of cases hold that there is a constitutional right. Though they differ concerning whether it arises under the First, Ninth or Fourteeenth Amendment, most speak in terms of substantive due process or the right to be let alone (Crews v. Cloncs, 432 F. 2d 1259; Griffin v. Tatum, 425 F. 2d 201; King v. Saddleback Junior Coll. Dist., 425 F. 2d 426, on remand 318 F. Supp. 89; Richards v. Thurston, 424 F. 2d 1281; Breen v. Kahl, 419 F. 2d 1034, cert. den. 398 U. S. 937; Parker v. Fry, 323 F. Supp. 728; Axtell v. La Penna, 323 F. Supp. 1077; Lindquist v. City of Coral Gables, 323 F. Supp. 1161, supra; Dawson v. Hillsborough County, Florida School Bd., 322 F. Supp. 286; Martin v. Davison, 322 F. Supp. 318; Lambert v. Marushi, 322 F. Supp. 326; Turley v. Adel Community School Dist., 322 F. Supp. 402; Watson v. Thompson, 321 F. Supp. 394; Karr v. Schmidt, 320 F. Supp. 728, motion to vacate stay of injunction den. 401 U. S. 930; Gere v. Stanley, 320 F. Supp. 852; Jeffers v. Yuba City Unified School Dist., 319 F. Supp. 368; Miller v. Gillis, 315 F. Supp. 94; Corley v. Daunhauer, 312 F. Supp. 811; Crossen v. Fatsi, 309 F. Supp. 114; Sims v. Colfax Community School Dist., 307 F. Supp. 485; Olff v. East Side Union High School Dist., 305 F. Supp. 557; Westley v. Rossi, 305 F. Supp. 706; Braxton v. Board of Public Instruction of Duval County, 303 F. Supp. 958, supra; Komadina v. Peckham, 13 Ariz. App. 498; Morrow v. Roberts, 467 S. W. 2d 393 [Ark.]; Meyers v. Arcata Union High School Dist., 269 Cal. App. 2d 549; Finot v. Pasadena City Bd. of Educ., 250 Cal. App. 2d 189, supra; Yoo v. Moynihan, 28 Conn. Sup. 375; Murphy v. Pocatello School Dist. No. 25, 94 Idaho 32; Laine v. Dittman, 125 Ill. App. 2d 136; see Conyers v. Glenn, 243 So. 2d 204 [Fla.]; Van Alstyne, op cit. supra, 16 U. C. L. A. L. Rev., at pp. 768-769).
4. Some cases rely on the presumption that legislation is valid if a rational basis for it can be perceived (Leonard v. School Comm., 349 Mass. 704; Shows v. Freeman, 230 So. 2d 63 [Miss.]) or hold that the burden of proof is upon the person alleging a constitutional violation unless the violation in question is of a specifically guaranteed right or a fundamental liberty (King v. Saddleback Junior Coll. Dist., 425 F. 2d 426, supra; Dunham v. Pulsifer, 312 F. Supp. 411; Brownlee v. Bradley County, Tennessee Bd. of Educ., 311 F. Supp. 1360, supra).
*269 5. The weight of authority is, however, that the right to determine one’s own personal appearance is a fundamental liberty and that, therefore, the State bears the burden of establishing substantial justification for its regulation (Crews v. Cloncs; Richards v. Thurston; Breen v. Kahl; Parker v. Fry; Axtell v. La Penna; Lindquist v. City of Coral Gables; Martin v. Davison; Lambert v. Marushi; Turley v. Adel Community School Dist.; Watson v. Thompson; Gere v. Stanley; King v. Saddleback Junior Coll. Dist.; Sims v. Colfax Community School Dist.; Olff v. East Side Union High School Dist.; Komadina v. Peckham; Meyers v. Arcata Union High School Dist.; Murphy v. Pocatello School Dist. No. 25; Laine v. Dittman; all supra, paragraph numbered 3; Black v. Cothren, 316 F. Supp. 468; Dunham v. Pulsifer, 312 F. Supp. 411, supra; Cash v. Hoch, 309 F. Supp. 346).
On principle and on the authorities set forth above, the court holds that there is as a matter of substantive due process a constitutional right to determine one’s own hair style and that the burden.is upon the board to show substantial justification for the regulation it seeks to impose. Since the proceeding is being treated as an action for declaratory judgment, the board is not limited by the evidence presented at the March 22,1971 hearing, but to avoid summary declaratory judgment it must show that there is a triable issue of fact. The two justifications suggested by its papers are the necessity for maintaining a uniform appearance, and safety, in that the seal of a gas mask is interfered with by long sideburns and hair.
Uniform appearance is said to be necessary “ to insure that each fireman has a professional appearance which is essential to engendering public confidence and respect,” (Wernersbach affidavit, par. 13). The regulation does not in fact mandate a uniform appearance; rather, it establishes maximum limits beyond which hair must not be permitted to grow. Moreover, what public confidence and respect has to do with the business of fire fighting is not explained, nor is it anywhere established that hair growth which exceeds the regulatory maximum results in loss of public confidence, or that there exists no other way, less destructive of John Hunt’s constitutional rights, to retain such confidence and respect, if indeed it be essential.
Safety factors could well establish the reasonable relationship required to support a regulation of hair growth. Since firemen do not always work independently of each other, the safety of an individual fireman may be of importance not only to him but to his fellow firemen and to the success of their fire fighting efforts. If the board’s papers indicated that hair touching the collar con *270 stituted a serious danger that a fireman’s hair would catch fire and thus disable him, or that the length of his sideburns prevented a satisfactory seal of his gas mask, thus increasing the risk of his being disabled by smoke, a triable issue of fact would have been established. Unfortunately, they do not. Statistics, such as were presented by the Department of Motor Vehicles to support legislation requiring that a motorcyclist wear a crash helmet (see N. Y. Legis. Ann., 1966, pp. 272-273) are missing from this record, nor is there any explanation concerning the effect of physiognomonic variations (in the size of ear and in the position of the ear on the head) on the “ below the ear ” standard for sideburns (see Komadina v. Peckham, supra, 13 Ariz. App., n. 1).
The documents upon which the board relies do not establish a triable issue. Exhibit I (to the answer) is a bulletin (reprinted in Exhibit J) of the Nassau County Firemen’s Training Center concerning beards. It does not mention hair on collar or sideburns and while it suggests that a clean-shaven face is best, indicates that the problem is whether hair projects beyond the face seal of the mask. It does not establish that sideburn hair below the ear necessarily does so interfere. Exhibit K is a letter from the manufacturer of the mask stating that its tests ‘ ‘ indicate that a respiratory protective device will not provide an adequate seal on a bearded surface ” but stating that “ Mustaches or any bearded surface fully inside or fully outside the sealing areas of the facepiece will not, of course, affect the seal.” It does not establish that sideburn hair below the ear is not fully outside the sealing area. Exhibit L is an article from the March, 1971, issue of Fire Engineering which supports not the board’s but John Hunt’s position, for it states: “ But shapes of heads and facial structure vary considerably among mankind. And the question arises, ‘ How long is too long! ’ A chief who arbitrarily decides that a 3-inch beard or sideburn is the limit for all members does not automatically provide a face seal for every hairy brother.”
The court does not hold that the only valid standard is the physiognomy of each individual fireman, for that may well prove to be administratively unworkable: What it does hold is that here, as in Lindquist v. City of Coral Gables (323 F. Supp. 1161, supra), on the papers presented the board has not demonstrated that a triable issue exists concerning the relationship of its regulation to the public interest, and that, therefore, John Hunt is entitled to summary judgment declaring the regulation in its present form invalid and directing his reinstatement as a member of the department.