Steven- B. Derountan", J.
This is an action by plaintiffs for a declaratory judgment declaring certain by-laws of the Hemp-stead Fire Department as they pertain to facial hair and hair length, unconstitutional, and for a direction by this court that plaintiffs be reinstated nunc pro tunc as members of the Hemp-stead Fire Department as of the time of their suspension. Each plaintiff also seeks compensatory damages in the sum of $50,000 and exemplary damages in the sum of $25,000.
Plaintiffs had been volunteer firemen with the Hempstead Fire Department. On or about April 28, 1971, the Hempstead Fire Department adopted certain amendments to its by-laws which read as follows: ‘ ‘ While in Fire Stations and/or attending any firematic function the following regulations shall prevail: 1. Hair length shall not extend beyond the collar. No afro style cuts. Hair shall be neat and well trimmed. 2. Sideburns shall not extend beyond the lower ear lobe and shall be neat and well trimmed. 3. Mustache shall not extend below the corner of the mouth and be neat and well trimmed. Fu-man-chu and handlebar mustaches will not be permitted. 4. Beards, chin whiskers, or goatees will not be permitted.”
While said by-laws were in effect, plaintiff Olszewski grew and wore a goatee. He was ordered to remove it, refused to do so, and was thereafter suspended.
Plaintiff Loiacono, in violation of the by-laws, permitted his hair to grow to a length below the collar and he, too, was suspended.
It is the contention of the plaintiffs that the by-laws as amended are a violation of their constitutional rights, specifically the rights secured to them by the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution, and section 8 of article I of the New York State Constitution; in a word, they allege that their constitutional rights have been violated in that they have been deprived of their right to peaceful expression and of their constitutional right to determine their own personal appearance.
It is the contention of the defendant fire department that the by-laws in question should be sustained on the grounds: First, that the by-laws as amended were a necessary safety measure *605 enacted by the defendant for the health and safety of its own members; and, second, that the by-laws are a proper disciplinary measure to insure uniformity of dress and appearance and foster morale amongst its members as a paramilitary organization.
Plaintiffs had directed the court’s attention to a recent decision of a brother Justice of this court, Matter of Hunt v. Board of Fire Comrs. of Massapequa Fire Dist. (68 Misc 2d 261). It is the plaintiffs’ position that the Hunt decision evolved from facts practically identical to those before this court. A more correct statement should have been that the issues were substantially identical; but the facts in evidence in the Hunt case fell far short of those adduced on the testimony presented in this case. In the Hunt controversy the petitioner proceeded by way of an article 78 proceeding. Since that was an incorrect vehicle by which to attack a legislative enactment as being unconstitutional, and seeking to get to the heart of the matter, the court with the consent of the parties treated that proceeding as an action for declaratory judgment without abridging the right of the respondents therein to submit additional testimony on the issues raised. From a reading of that decision, it does not appear that the respondents did any more than to submit affidavits in support of their position. On a motion for summary judgment the court found that the documents and papers submitted by the respondents did not in its view raise a triable issue and, accordingly, the court granted summary judgment adjudging that the bulletin in question violated petitioner’s constitutional rights.
In Hunt (supra), the court said: ‘‘Safety factors could well establish the reasonable relationship required to support a regulation of hair growth. Since firemen do not always work independently of each other, the safety of an individual fireman may be of importance not only to him but to his fellow firemen and to the success of their fire fighting efforts. If the board’s papers indicated that hair touching the collar constituted a serious danger that a fireman’s hair would catch fire and thus disable him, or that the length of his sideburns prevented á satisfactory seal of his gas mask, thus increasing the risk of his being disabled by smoke, a triable issue of fact would have been established.” (Matter of Hunt v. Board of Fire Comrs. of Massapequa Fire Dist., 68 Misc 2d 261, 269-270, supra).
In the case at bar, both sides produced experts, or at least people who had considerable experience with masks used in fire fighting. In reviewing their testimony, it appears to be the consensus that facial hair can adversely affect the seal of a gas *606 mask. Indeed, plaintiffs’ own expert, one Charles Werner, testified on direct examination as follows:
“ Q So if a man has a large face, he could have a problem with the seal, notwithstanding any facial hair; is that correct? A No, it would be a better seal without any facial hair.
“ Q So then facial hair will affect a seal, is that correct? A right. ’ ’
On cross-examination of this same witness, he testified:
“ Q Do you know of any actual cases where facial hair of any kind interfered with the seal of a Scott Pac or a similar type mask? A Yes.
“ Q Tell us how many such cases do you know about? A I know of one in particular.
‘ ‘ Q What happened in that case ? A The man had a mask on, but he’s got a heaiver beard than Mr. Olszewski, and it did not form a seal due to the contour of his face and the growth of his beard. ’ ’
And the same witness testified, again on cross-examination:
“ Q Would you then say that the combination of the physical activity of fighting a fire with facial hair can affect the seal of the Scott Air Pac? A Yes, it could.”
Defendant’s Exhibit C in evidence is a safety bulletin prepared by the United States Naval Safety Center, and in part reads as follows: “Additional complications can be expected when personnel who have beards and sideburns use these masks. Tests of bearded personnel using OBA’s and MK5 Gas Masks were recently conducted at the Naval Schools Command, Treasure Island. The test involved exposing personnel to tear gas. It was not a quantitative determination of the amount of in-leakage into the respirator through the beard but a practical “ go or no go ’ ’ type test. A satisfactory seal was considered to have been obtained if a significant amount of the tear gas did not enter the facepiece or, in the case of the OBA, if the breathing bag did not collapse. The tests showed that of 33 personnel who had beards or sideburns and were wearing MK5 Gas Masks, 36% failed to maintain satisfactory seals rendering the masks ineffective. Fifty one bearded personnel were tested wearing the OBA and 35% failed to maintain adequate seals.
“ It was noted that even though some bearded personnel were able to maintain a satisfactory seal when tested, it is likely that as the beard grows or is trimmed this ability would no longer exist. Naval Safety Center has other supporting evidence, some based on ‘ in-leakage rates ’ which shows, in general, *607 that beard growth compromises the safe use of most respirator types.
“In order to provide adequate protection to the OB A/Gras Mask wearer and to insure a more effective Damage Control team, personnel who are assigned duties involving the wearing of a breathing apparatus should not have beards or sideburns that will negate their effectiveness.”
It would appear, therefore, from both the documentary evidence and the testimony of witnesses experienced in the use of masks, that facial hair not only may, but in effect does, have an effect on the seal of a mask.
There was testimony in the case that if the facial hair is fully contained within the mask that it was unlikely that there would be a defect in the seal of the mask. The plaintiff Olszewski was and is wearing what is commonly known as a “ goatee ”, which admittedly would be entirely contained in the mask were he to use it. However, the goatee is only the younger brother to the full beard, and it is the view of this court that it would be administratively unworkable for the Hempstead Fire Department to maintain a running inspection or check on its firemen to determine the length or size of beards on any given day.
Plaintiff Loiacono was suspended for allowing his hair length to extend beyond or below the collar. The defendant’s witness, William Manuell, testified that he was a member of the West Sayville Fire Department for a period of three and a half years. During that time, he had been involved in fighting from 300 to 400 fires. He testified that in November of 1970 his hair length came below that of the helmet he was wearing during the course of his fighting a fire. The exact answer to the question put to him on what occurred at that time is contained on page 388 of the stenographer’s minutes, where he said: “I was up in the second-floor room and my hair was burned right below the helmet all the way around. I burned both my ears and my neck all the way around.” Manuell went on to point out that this incident occurred to him despite the fact that he was wearing full equipment, which included an overcoat, gear, and helmet and, further, that his coat collar was buttoned or clipped at the very top of his neck. What happened to Manuell is not a matter of speculation, nor what might have happened, nor what could have happened, but what in fact did happen to him when his hair length extended below his helmet.
The purpose of a fire department, indeed its only function, is to prevent fires, to control fires, and to extinguish fires. To that end every regulation, requirement or by-law of that fire *608 department which is reasonably calculated to effect the efficient discharge of the sworn duty of each member of that fire department is directly related to the public interest. The life isaving function enjoined upon afire department is superior and is paramount to ithe rights of any individual within that department. In effect, therefore, the court adheres to the statement made by Mr. Justice Holmes in McAuliffe v. Mayor and Bd. of Aldermen of New Bedford (155 Mass. 216, 220), that “petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. In Matter of Krolick v. Lowery (32 A D 2d 317, affd. 26 N Y 2d 723, cert. den. 397 U. S. 1075, the court said in part (32 A D 2d 317, 322, supra): “ There is no constitutional right to be a fireman. When one voluntarily elects to be a fireman he swears, voluntarily, to obey the orders and directions of his superiors to the best of his ability. The oath does not contain the reservation that obedience is conditioned upon personal agreement with such order. Necessarily he waives certain rights when he takes the oath.”
To put it another way, we have before us what could be characterized as a balancing or weighing of rights. The scale of human conduct comes into precarious imbalance when one wishes to have weighed thereon only his rights without taking into account the rights of the public at large or the rights of his covolunteers serving as members of the fire department. In weighing those rights, as the court must, the court finds, based on the case law it has reviewed, the plaintiffs do have a constitutional right to wear facial hair or to grow their hair length to whatever length they wish, if we considered nothing more. However, when we take into account that these men wish to do so and, in the court’s view, may cause peril to themselves as well as to their comrades and the public at large, then we must consider the paramount right of the public whom the plaintiffs are sworn to serve.
Based on the evidence before this court, it appears that the by-laws in question were reasonably calculated to insure the greater safety of not only the plaintiffs but all the members of the fire department with whom they serve and, hence, that the by-laws as amended are constitutional.
In Lindquist v. City of Coral Gables (323 F. Supp. 1161), which plaintiffs cite in support of their position, the court said (p. 1164): “ Nothing in this decision should be construed to limit the authority of governmental employers to regulate the hair and/or sideburns of their employees upon a showing of a compelling governmental interest.”
*609 It is the judgment of this court, based on the record in this trial, that the defendants have demonstrated a paramount and compelling governmental and public interest sufficient to sustain the constitutional validity of the by-laws in question.
The complaint is dismissed in its entirety, without costs.